**STATE v. SHOPE**

[128 N.C. App. 611 (1998)]

STATE OF NORTH CAROLINA v. GARY LEONARD SHOPE, DEFENDANT

No. COA97-61

(Filed 17 February 1998)

### 1. Criminal Law § 444 (NCI4th Rev.)— prosecutor's argument—defendant's credibility—curative instructions

There was no abuse of discretion prejudicial to defendant in a manslaughter prosecution where the trial court did not intervene *ex mero moto* when the prosecution argued that defendant's own attorney doubted defendant's credibility. Assuming that these comments were beyond the scope of proper argument, the court's instructions that the jury were the sole judges of credibility remedies any error.

### 2. Homicide § 760 (NCI4th)— manslaughter—Fair Sentencing Act—aggravating factor—heinous, atrocious or cruel

The trial court properly found as an aggravating factor when sentencing defendant for manslaughter that the killing of the victim was especially heinous, atrocious, or cruel where the evidence established excessive brutality and physical pain not usually present in a case of voluntary manslaughter. N.C.G.S. § 15A-1340.4(a)(1)(f).

### 3. Homicide § 760 (NCI4th)— voluntary manslaughter—Fair Sentencing Act—jealous rage—not mitigating circumstances

The trial court did not err in a manslaughter prosecution by rejecting defendant's claim that his relationship with the victim constituted an extenuating circumstance warranting mitigation of his sentence where he claimed his killing of the victim resulted from finding her in the arms of another man moments before the killing. N.C.G.S. § 15A-1340.4(a)(2)(i).

Appeal by defendant from judgment entered 28 June 1996 by Judge Claude S. Sitton in Graham County Superior Court. Heard in the Court of Appeals 8 October 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General K. D. Sturgis, for the State.*

*Appellate Defender Malcolm R. Hunter, Jr., by Assistant Appellate Defender Constance H. Everhart, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant Gary Leonard Shope appeals from a judgment entered upon a jury verdict convicting him of voluntary manslaughter in the 5 September 1991 beating death of Lillian Turpin Porter (hereinafter "Porter"). At trial, the State presented the following evidence: In the weeks before her murder, Porter lived with defendant, her boyfriend of two years, at a campsite by Lake Santeelah in Graham County, North Carolina. On the afternoon of 5 September 1991, defendant returned to the campground after visiting with his nephew to find Porter at the neighboring campsite of Jeffrey Sanford and Lewis Griggs. She had been drinking, and she accused defendant of stealing her car. The couple argued heatedly for several minutes, but the argument eventually died down, and the couple remained at the Sanford-Griggs campsite, talking and drinking whisky. Later that evening, Griggs passed out, so defendant, Porter, and Sanford moved the party to the couple's campsite. Once again, defendant and Porter began to quarrel. However, when Sanford threatened to shoot defendant if he did not leave, defendant complied.

After defendant left, Porter told Sanford that defendant had been beating her for a week and showed him a wound on her shoulder that she claimed defendant had inflicted. Then, Sanford kissed Porter, and defendant witnessed this, having returned to the campsite without their knowledge. When Porter discovered defendant's presence, she insisted that Sanford go back to his campsite to check on Griggs. He did, and moments later, he heard Porter cry out, "God, don't kill me! You've got me killed now!" Porter continued to scream as Sanford ran back to the couple's campsite. When he reached the campsite, he found Porter lying face down in a pool of blood. Defendant was gone.

The police arrived at the campsite shortly after Sanford summoned help. At the scene, the investigating officers discovered a bloody tree branch, approximately three and one-half to four feet long, broken into three pieces and lying near Porter's body. In addition, they found a bloody towel, dentures, bone fragments, and teeth. Dr. William Selby, the pathologist who performed the autopsy on Porter's body, determined that she had suffered massive trauma to her face, neck, and head. Dr. Selby listed the cause of death as multiple blunt trauma to the head, but noted that suffocation could also have caused Porter's death, due to blood in her airway or swelling of her windpipe.

STATE v. SHOPE

[128 N.C. App. 611 (1998)]

Following an extensive search, the police located and arrested defendant on 10 September 1991. Defendant admitted that he struck Porter in the face and mouth with a stick and that he wiped off the blood with a towel. Defendant stated that he then grabbed two pints of liquor, some blankets, and Porter's purse and fled into the woods.

At trial, the jury found defendant guilty of voluntary manslaughter. During sentencing, the trial court found both aggravating and mitigating factors. The court, however, determined that the aggravating factors outweighed the mitigating factors and sentenced defendant to imprisonment for twenty years, a term exceeding the six-year presumptive sentence. Defendant appeals.

---

[1] Defendant first asserts that the trial court erred in failing to intervene *ex mero motu* to prohibit the prosecutor's repeated insinuations during closing argument that defendant's own attorney doubted the credibility of his testimony. Defendant contends that despite his failure to object at trial, the prosecutor's comments were so grossly improper that the court's lack of intervention resulted in a violation of defendant's due process rights under the United States and North Carolina Constitutions. We cannot agree.

"It is well settled that the arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (citations omitted). To that end, counsel are permitted to argue the evidence presented and all inferences reasonably drawn therefrom. *Id.* (citations omitted). "Even so, counsel may not, by argument . . ., place before the jury incompetent and prejudicial matters by injecting his own knowledge, beliefs, and personal opinions not supported by the evidence." *State v. Britt*, 288 N.C. 699, 711, 220 S.E.2d 283, 291 (1975) (citations omitted).

Defense counsel must object, and thereby, call the court's attention to any improper comments made by the prosecutor during his or her closing argument to the jury. *State v. Wilder*, 124 N.C. App. 136, 142, 476 S.E.2d 394, 399 (1996) (citing *State v. Sanders*, 327 N.C. 319, 342, 395 S.E.2d 412, 427 (1990), *cert. denied*, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991)). Absent such an objection, our review is limited to a determination of whether, in light of all the circumstances, the prosecutor's argument was " 'so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu* to correct

the error.' " *Id.* (quoting *State v. Allen,* 323 N.C. 208, 226, 372 S.E.2d 855, 865 (1988)). In any case, where the trial court's instructions to the jury cure the prosecutor's alleged improper arguments, the court's failure to correct the arguments *ex mero motu* will not constitute prejudicial error. *See id.; State v. Price,* 344 N.C. 583, 476 S.E.2d 317 (1996).

In the case before us, defendant takes issue with several statements made by the prosecutor during his closing argument. For instance, regarding an alibi offered by defense counsel in his closing, the prosecutor said,

> [Defense counsel] is saying just don't believe anything [defendant] says, believe me, [defense counsel], when I stand up and testify as a witness telling you about Plan C.

Defendant also points to three additional remarks made by the prosecutor which suggested that defendant's attorney did not believe his testimony to be credible. Assuming, without deciding, that these comments were beyond the scope of proper argument, the trial court's instructions to the jury remedied any error potentially resulting from the comments. The court specifically advised the jury that they "[we]re the sole judges of the credibility of each witness" and that they were to "decide for [them]selves whether to believe the testimony of any witness." We are, therefore, satisfied that the jury was adequately instructed against looking to anyone but themselves in judging whether to believe defendant's testimony. Thus, as we discern no abuse of discretion resulting in prejudice to the defendant, this argument is overruled.

[2] Secondly, defendant contends that the trial court erred in finding as an aggravating sentencing factor that the offense was especially heinous, atrocious, or cruel under North Carolina General Statutes section 15A-1340.4(a)(1)(f). Defendant maintains that because Porter was intoxicated when she was killed and because she "could have died in as little as five minutes," the court's finding had no basis in law or fact. Again, we disagree.

Our Supreme Court, in *State v. Blackwelder,* 309 N.C. 410, 306 S.E.2d 783 (1983), set forth the standard for determining whether an offense is especially heinous, atrocious, or cruel under section 15A-1340.4(a)(1)(f) of the General Statutes. The Court held that, in cases decided under section 15A-1340.4(a)(1)(f), "the focus should be on whether the facts of the case disclose *excessive* brutality, or phys-

ical pain, psychological suffering, or dehumanizing aspects *not normally present in that offense.*" *Id.* at 414, 306 S.E.2d at 786. Moreover, the Court stated that it "[did] not consider it inappropriate in any case to measure the brutality of the crime by the extent of the physical mutilation of the body of the deceased." *Id.* at 415, 306 S.E.2d at 787.

In the instant case, the evidence overwhelmingly showed that Porter endured a savage and merciless beating at the hands of defendant. Dr. Selby testified that Porter's skull was fractured in places too numerous to count; that her brain was bruised so severely that it bled into her spinal fluid; that both of her cheekbones were broken; that her nose was broken and almost completely severed from her face; that her jawbone was broken and exposed through torn facial tissue in the lower part of her mouth; and that her hyoid bone and larynx were broken, which indicated especially severe trauma. Dr. Selby opined that the injuries inflicted to Porter's face would have been very painful and that it could have taken anywhere between five and thirty minutes for her to die. He testified further that it seemed unlikely that Porter was knocked unconscious by the first blow, because the defensive wounds to her arms, hands, and fingers "reflect[ed] a fairly high level of consciousness" and confirmed that she fought to save her life.

Sanford's testimony also showed that Porter was conscious during the beating and that she was aware of her impending death. He stated that he heard Porter scream for several minutes and that she cried out, "God, don't kill me! You've got me killed now!" This evidence, viewed in the light most favorable to the State, establishes excessive brutality and physical pain not usually present in a case of voluntary manslaughter. Therefore, the court properly found that the offense was especially heinous, atrocious, or cruel. Defendant's argument, then, is unpersuasive.

[3] In his final argument, defendant alleges that the trial court erred in failing to find that his relationship with Porter was an extenuating circumstance warranting mitigation of his sentence. Defendant argues that because he found Porter in another man's arms "only moments before the killing," part of the blame for her death morally falls on her. We reject this argument, as it is wholly without merit.

The Fair Sentencing Act provides for a factor mitigating a defendant's sentence where, "the relationship between the defendant and the victim was . . . extenuating." N.C. Gen. Stat. § 15A-1340.4(a)(2)(i)

(1988). This Court, however, has specifically interpreted this factor so as to exclude killings "motivated by jealousy or rage." *State v. Puckett*, 66 N.C. App. 600, 606, 312 S.E.2d 207, 211 (1984). Indeed, we have held that "[t]he statute was meant to apply under 'circumstances that morally shift part of the fault for a crime from the criminal to the victim' but not 'to make homicides of spouses or relatives . . . less deserving of punishment than those of others.' " *State v. Neville*, 108 N.C. App. 330, 333, 423 S.E.2d 496, 498 (1992) (quoting *State v. Martin*, 68 N.C. App. 272, 276, 314 S.E.2d 805, 807 (1984)).

In the case *sub judice*, defendant submits that in killing Porter, he acted out of jealousy. Still, he contends that the facts of this case compelled the court to find an extenuating circumstance, since defendant discovered Porter in the arms of another man "only moments before the killing." Truly, defendant proposes a distinction without a difference, and we hold that the fatal beating in this case falls squarely within the "jealous rage" exclusion set forth in *Puckett*. Therefore, the trial court did not err in failing to find that defendant's relationship with Porter was a mitigating factor.

We note that defendant asserted twelve additional assignments of error that he declined to bring forth in his brief. Hence, they are considered to be abandoned. N.C.R. App. P. 28(b)(5).

For the foregoing reasons, we hold that defendant received a fair trial, free of prejudicial error.

No error.

Judges GREENE and JOHN concur.