STATE OF NORTH CAROLINA v. NEIVUS RENORD POAG

No. COA02-773

(Filed 5 August 2003)

**1. Homicide— attempted first-degree murder—motion to dismiss—sufficiency of evidence—specific intent**

The trial court did not err by denying defendant's motion to dismiss the charge of attempted first-degree murder, because there was sufficient evidence presented at trial to permit the jury to find that defendant possessed the specific intent to kill the victim during a robbery at a convenience store.

**2. Criminal Law— prosecutor's argument—questioning of witness—misstatement of law on acting in concert**

The trial court did not err in a second-degree murder, attempted first-degree murder, and robbery with a dangerous weapon case by failing to correct the prosecutor's closing argu-

ment that misstated the law on acting in concert and the State's question to a witness misstating the law by representing that mere presence at the scene of the crime and knowledge thereof was sufficient to find defendant guilty of acting in concert, because: (1) while the State misstated the law on acting in concert during closing argument, the trial court did not abuse its discretion in failing to correct the error ex mero motu when the trial court's instructions to the jury regarding acting in concert correctly stated the law and cured the improper statements made by the State during closing arguments; and (2) the trial court did not commit plain error by failing to correct the State's misstatement of the law on acting in concert while questioning a witness because defendant failed to show that the jury probably would have reached a different result had the trial court intervened to correct the State's misstatement, defendant failed to demonstrate that failure to correct the misstatement resulted in a fundamental miscarriage of justice, and the trial court correctly instructed the jury on the law of acting in concert, thereby curing the State's misstatements.

**3. Criminal Law— instruction—acting in concert**

The trial court did not commit plain error in a second-degree murder, attempted first-degree murder, and robbery with a dangerous weapon case by instructing the jury on acting in concert, because the evidence sufficiently supported a conclusion that defendant acted in concert with three others to commit armed robbery.

**4. Identification of Defendants— personal knowledge—discrepancies weighed by jury**

The trial court did not commit plain error in a second-degree murder, attempted first-degree murder, and robbery with a dangerous weapon case by allowing a victim to identify defendant as the shooter even though defendant contends the victim lacked sufficient personal knowledge to allow her to make such an identification, because: (1) the evidence showed that the victim had personal knowledge of defendant stemming from her perception of him gained during the robbery; (2) the extent of the victim's identification and the discrepancy between her testimony regarding defendant's height and his actual height go to the weight of the evidence rather than to its admissibility and is a matter to be considered by the jury; and (3) defendant has failed to demonstrate that the jury probably would have reached a different

result had the victim's identification testimony been excluded or that inclusion of the testimony created a miscarriage of justice.

## 5. Sentencing— consecutive sentence—rejection of plea agreement

The trial court did not err in a second-degree murder, attempted first-degree murder, and robbery with a dangerous weapon case by imposing a consecutive sentence for defendant's robbery conviction instead of a concurrent sentence even though defendant contends it was punishment based on his exercise of his right to a jury trial, because: (1) there was nothing in the record that indicated that the trial court imposed a consecutive sentence on defendant as punishment for his rejection of a plea agreement that would have imposed a concurrent sentence; and (2) the trial court was not limited by the initial terms of the plea bargain and was free to impose a fair and appropriate sentence after the jury returned a guilty verdict.

Appeal by defendant from judgments dated 10 October 2001 by Judge Steve A. Balog in Superior Court, Rowan County. Heard in the Court of Appeals 15 May 2003.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Daniel Shatz for defendant-appellant.*

McGEE, Judge.

Neivus Renord Poag (defendant) was indicted on one count each of murder, attempted murder, and robbery with a dangerous weapon on 8 January 2001. The State's evidence at trial tended to show the following. Kunjbala Patel (Mrs. Patel) testified at trial that she and her husband, Pralhad Patel (Mr. Patel), operated the A OK Mart (the store) in Salisbury, North Carolina. Mrs. Patel stated that she was behind the cash register and Mr. Patel was sitting to her left talking with David Gray, a friend and customer, between 8:15 and 8:30 pm on 12 December 2000. Mr. Patel got up, moved towards her, and said "they are here." Mrs. Patel saw a man wearing a knit mask near the cash register, who shouted for her to give him the cash and started shooting. She ducked under the counter and attempted to hit a panic button. Mrs. Patel testified that she got up from the floor and opened the cash drawer. After opening the cash drawer, the man shot her, reached over the counter to the cash register, took approximately

$100 to $150, and left. Mrs. Patel called 911. Mrs. Patel stated that she was shot twice and her husband was shot at least once, but that she does not remember who was shot first. Mrs. Patel was shot once in the head and once in the arm. Mrs. Patel testified that she could not remember if Mr. Patel reached for the gun he kept under the counter, but she stated that he did not fire the gun during the robbery. Mr. Patel died from gunshot wounds to the chest.

Mrs. Patel was unable to see the robber's face because of the mask he was wearing, but she told the police that she thought she knew the man's identity. She gave the police a description and told them that he was a friend of a woman who lived behind the store. In her statement to the police that night, Mrs. Patel described the man as wearing a dark knit mask with eye holes, but no holes for the nose or mouth. She described him as 5'6" tall, medium build, roundish face, in his thirties, short hair, and dark skin. She stated that she knew the identity of the man because of his eyes and the contour of his face. She could not remember what clothing the man was wearing except for gloves. Mrs. Patel identified defendant in court as the man who shot her and stated that he had been in the store numerous times previously, including two or three days before the robbery.

Tyron Chambers (Chambers) testified for the State pursuant to a plea agreement. Chambers testified that he, Corey Smith (Smith), Demetrius Neely (Neely), and defendant drove to the store to buy some "smokes." Chambers entered the store, purchased the "smokes," and returned to the car. After they drove away from the parking lot, defendant told Chambers to pull over because defendant had seen some money in the store and wanted to rob it. Defendant and Smith entered the store and committed the robbery while Chambers and Neely waited in the car. Chambers testified that defendant was armed with a .22 caliber handgun and Smith had a .380 caliber handgun. After defendant and Smith returned to the car, defendant said that he had to shoot Mr. Patel because he had a gun. After the robbery, the four men went to Chambers' house where Smith and defendant changed into some of Chambers' clothes. Chambers and Neely sold defendant some crack. Chambers stated that he threw Smith's and defendant's clothes into a dumpster and threw a bag containing the masks into the woods the day following the robbery.

Neely also testified for the State under a plea agreement. Neely stated that he, defendant, Smith, and Chambers stopped at the store and Chambers went into to by "smokes" while the other three waited

outside in the car. After leaving the parking lot, defendant talked about robbing the store and Chambers pulled the car over. Smith was armed with a .380 caliber handgun and defendant was armed with a .22 caliber handgun, and both put on gloves and ski masks. Defendant and Smith entered the store and returned after a couple of minutes. Defendant said he had to shoot the Patels because Mr. Patel was reaching for a gun. The group went to Chambers' apartment where defendant threatened to kill them if anyone told. Neely denied seeing Chambers throw anything into the woods.

Smith also testified for the State pursuant to a plea agreement. He testified that the group went to the store to buy "smokes" and Chambers and Neely went inside while he and defendant remained outside. After everyone was back in the car, defendant suggested robbing the store. Chambers said no, but Smith stated that he would go along because he needed money to buy crack. Smith testified that he entered the store on 12 December 2000 with a gun, but that defendant was the person who shot the Patels. Smith stated that defendant was ahead of him and that Mr. Patel had already been shot and was lying on the floor when Smith entered the store. Smith said that defendant told Mrs. Patel to open the cash register and that when she said no, he hit her in the face with the gun and demanded money. Defendant told Smith to grab the money, but Smith said no, and ran out of the store. Smith said that after defendant returned to the car, defendant said he had some money and that he had "went out and shot some [expletives deleted]." Smith testified that they went to Chambers' girlfriend's house where they divided the money and Chambers and Neely sold defendant some crack.

Smith stated that defendant threatened to shoot him and his mother if Smith said anything about the robbery. In a statement to police, Smith said that defendant "first shot the lady one time, then shot the old man one time, then shot the lady again, and then I think he shot the old man two more times." However, Smith testified at trial that he only saw defendant hit Mrs. Patel with the gun and did not witness defendant fire any shots.

Detective Rita Rule (Detective Rule) of the Salisbury Police Department testified that she spoke with Mrs. Patel in the hospital on the night of the robbery. Detective Rule testified that Mrs. Patel stated that a black man wearing a ski mask entered the store, pointed a gun at her and Mr. Patel, and demanded money from the cash register. Detective Rule stated that Mrs. Patel described the suspect as approximately 5'6", in his thirties, with a medium build, short hair,

and roundish face but not chubby cheeks. Detective Rule also said that Mrs. Patel identified the suspect as "JoAnn [Allison's] ex-boyfriend" and was adamant about her identification because of the suspect's eyes and the contour of his face. Detective Rule showed Mrs. Patel two photographic lineups on 22 December 2000, one of which contained defendant's photograph, but Mrs. Patel was unable to identify the shooter from either lineup. The police investigation also showed defendant's height was 6'1", approximately seven inches taller than the description given by Mrs. Patel. Detective Rule also testified that, pursuant to a tip, she recovered some ski masks that had been disposed of in the woods, but that analysis by the State Bureau of Investigation did not reveal any transfer of hair from the suspects to the masks.

Defendant testified that he was at his cousin's house on 12 December 2000 playing video games when Chambers came by and agreed to drive defendant to where defendant's fiancé was staying. Chambers drove to the store to buy some cigars and pick up Neely. Defendant said that he used the pay phone to call his fiancé and did not enter the store, but that Chambers did enter the store. Defendant stated that he, Neely, Smith, and Chambers got into the car and Neely told Chambers to pull around the block. Neely and Smith got out of the car, and Chambers drove around the corner. Defendant stated that Neely and Smith got back into the vehicle about three to five minutes later and Neely told Chambers to drive. Defendant testified that he repeatedly asked Chambers to drop him off at his fiancé's house. He also stated that he did not know what was going on, had not seen any guns or masks, and did not hear talk of a robbery. He also said that after asking Chambers to drop him off while Neely and Smith were gone, Chambers told him that he "was not going to leave them like that." Defendant stated that he jumped out of the car when Chambers yielded at a stop sign.

Defendant testified that he knew the other three men, but was not close friends with them and did not "hang out" with them. Defendant said that he saw Neely at a K-Mart a week following the robbery and shooting and that Neely warned him to keep quiet and everything would be all right. Defendant gave a statement to police on 27 December 2000 and denied knowledge of the crimes. Defendant gave a second statement to police on 3 January 2001, which matched his trial testimony.

A jury convicted defendant of second degree murder, attempted first degree murder, and robbery with a firearm on 10 October 2001.

The trial court sentenced defendant to a minimum of 189 months and a maximum of 236 months in prison for second degree murder, a minimum of 189 months and a maximum of 236 months in prison for attempted murder, and a minimum of 95 months and a maximum of 123 months in prison for robbery with a dangerous weapon. The sentences were imposed to run consecutively. Defendant appeals.

[1] Defendant first argues the trial court erred in denying defendant's motion to dismiss the charge of attempted first degree murder at the close of the evidence. Defendant concedes in his brief that the State's evidence regarding his identity as the shooter was sufficient to be submitted to the jury. Defendant contends that the State failed to present sufficient evidence that he specifically intended to kill Mrs. Patel.

> "In ruling on a motion to dismiss, the trial court need only determine whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." Evidence is considered substantial when "a reasonable mind might accept [it] as adequate to support a conclusion." The motion to dismiss should be denied if there is substantial evidence supporting a finding that the offense charged was committed.

*State v. Craycraft*, 152 N.C. App. 211, 213, 567 S.E.2d 206, 208 (2002) (citations omitted). The State is entitled to all reasonable inferences that may be drawn from the evidence. *State v. Scott*, 296 N.C. 519, 522, 251 S.E.2d 414, 416 (1979).

The elements of attempted first degree murder are: "(1) a specific intent to kill another person unlawfully; (2) an overt act calculated to carry out that intent, going beyond mere preparation; (3) the existence of malice, premeditation, and deliberation accompanying the act; and (4) a failure to complete the intended killing." *State v. Peoples*, 141 N.C. App. 115, 117, 539 S.E.2d 25, 28 (2000). " 'An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred.' " *State v. Ferguson*, 261 N.C. 558, 561, 135 S.E.2d 626, 629 (1964) (quoting *State v. Cauley*, 244 N.C. 701, 708, 94 S.E.2d 915, 921 (1956)). "[T]he nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *State v. White*, 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982).

There was sufficient evidence presented at trial to permit the jury to find that defendant possessed the specific intent to kill Mrs. Patel. The evidence shows that defendant fired several shots upon entering the store, hitting Mr. and Mrs. Patel, both of whom were behind the counter. After Mrs. Patel opened the cash drawer, defendant shot her and took the money. Mrs. Patel was shot in the head and arm while Mr. Patel was shot twice in the chest, killing him. The evidence also indicates that Mrs. Patel was shot before and after defendant took the money from the cash drawer. Additionally, there is no evidence in the record that either Mr. Patel or Mrs. Patel provoked defendant or resisted.

When viewed in the light most favorable to the State, there was sufficient evidence to permit the jury to conclude that defendant intended to kill Mrs. Patel. The trial court did not err in denying defendant's motion to dismiss the charge of attempted first degree murder. This assignment of error is overruled.

[2] Defendant next argues the trial court erred in failing to correct the State's question to a witness and the prosecutor's closing argument that misstated the law on acting in concert. Defendant contends that the trial court's failure to correct these misstatements of law effectively deprived defendant of his defense. Defendant concedes that he failed to properly object to the State's improper jury argument. The general rule is that failure to object to a prosecutor's alleged improper jury argument prior to the verdict constitutes a waiver of the alleged error. *State v. Taylor*, 337 N.C. 597, 612, 447 S.E.2d 360, 370 (1994), *cert. denied*, 533 S.E.2d 475 (1999). However, our Supreme Court has held that "appellate review of a prosecutor's argument for *gross* impropriety in absence of an objection at trial is not limited to capital cases, but may be invoked as well in noncapital cases." *State v. Jones*, 317 N.C. 487, 500, 346 S.E.2d 657, 664 (1986). Absent an objection at trial, our appellate review is limited to whether the prosecutor's argument was so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu* to correct the error. *State v. Solomon*, 340 N.C. 212, 219, 456 S.E.2d 778, 783, *cert. denied*, *Solomon v. North Carolina*, 516 U.S. 996, 133 L. Ed. 2d 438 (1995); *Taylor*, 337 N.C. at 613, 447 S.E.2d at 370. "[W]here the trial court's instructions to the jury cure the prosecutor's alleged improper arguments, the court's failure to correct the arguments *ex mero motu* will not constitute prejudicial error." *State v. Shope*, 128 N.C. App. 611, 614, 495 S.E.2d 409, 412 (1998).

During its closing argument, the State represented that defendant was guilty of the crimes if he was in the car with the other individuals. The two essential elements of acting in concert are: (1) being present at the scene of the crime, and (2) acting together with another person who commits the acts necessary to constitute the crime pursuant to a common plan or purpose. *State v. Wallace*, 104 N.C. App. 498, 504, 410 S.E.2d 226, 230 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied, North Carolina v. Wallace*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). While the State misstated the law on acting in concert, the trial court did not abuse its discretion in failing to correct the error *ex mero motu*. The trial court correctly instructed the jury on the issue of acting in concert, stating that

> [f]or a person to be guilty of a crime, it is not necessary that he himself do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit robbery with a firearm, each of them, if actually or constructively present, is not only guilty of that crime if the other commits the crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose to commit robbery with a firearm, or as a natural or probable consequence thereof.

The trial court also gave this jury instruction when it repeated jury instructions for first degree murder and felony murder pursuant to the jury's request. The trial court's instructions to the jury regarding acting in concert correctly stated the law and cured the improper statements made by the State during closing arguments. Defendant has failed to show that the trial court abused its discretion in failing to correct the error *ex mero muto*.

Defendant also concedes that he failed to object to the State's misstatement of the law of acting in concert while questioning a witness. Since defendant failed to object at trial, we review defendant's argument under a plain error review. N.C.R. App. P. 10(c)(4); *State v. Rourke*, 143 N.C. App. 672, 675, 548 S.E.2d 188, 190, *cert. denied*, 354 N.C. 226, 553 S.E.2d 396 (2001).

> Plain error is an error which was "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." To prevail under a plain error analysis, a defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result.

*State v. Jones,* 137 N.C. App. 221, 226, 527 S.E.2d 700, 704 (citations omitted), *disc. review denied,* 352 N.C. 153, 544 S.E.2d 235 (2000). Our Supreme Court has stated that

> "[t]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial." ' "

*State v. Steen,* 352 N.C. 227, 255, 536 S.E.2d 1, 18 (2000) (emphasis omitted) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)), *cert. denied, Steen v. North Carolina,* 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

During trial, the State asked a witness: "You understand now that being in the car, and knowing the robbery was going to take place makes you legally responsible, don't you?" While the State's statements regarding acting in concert were incorrect, the error does not rise to the level of plain error. The State's representation of the law while questioning the witness misstated the law by representing that mere presence at the scene of the crime and knowledge thereof was sufficient to find defendant guilty. However, defendant has failed to show that the jury probably would have reached a different result had the trial court intervened to correct the State's misstatement. He also fails to demonstrate that failure to correct the misstatement resulted in a fundamental miscarriage of justice. As previously stated, the trial court correctly instructed the jury on the law of acting in concert, thereby curing the State's misstatements. In light of the compelling evidence of defendant's guilt presented at trial, we hold the trial court did not commit plain error in failing to correct the State's misstatement of the law of acting in concert. *See State v. Parks,* 148 N.C. App. 600, 609, 560 S.E.2d 179, 185 (2002). This assignment of error is without merit.

[3] Defendant next argues that the trial court committed plain error by instructing the jury on acting in concert. Defendant contends that the evidence did not support an instruction on acting in concert. Since defendant failed to object to the jury instruction at trial, he must show plain error by establishing that the trial court committed error, and that absent that error, the jury probably would have

reached a different result. *Jones*, 137 N.C. App. at 226, 527 S.E.2d at 704. It is generally prejudicial error for the trial court to instruct the jury on a theory of defendant's guilt that is not supported by the evidence. *State v. Brown*, 80 N.C. App. 307, 311, 342 S.E.2d 42, 44 (1986).

> "A defendant acts in concert with another to commit a crime when he acts in harmony or in conjunction with another pursuant to a common criminal plan or purpose." To be convicted of a crime under the theory of acting in concert, the defendant need not do any particular act constituting some part of the crime. All that is necessary is that the defendant be "present at the scene of the crime" and that he "act[] together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."

*State v. Lundy*, 135 N.C. App. 13, 18, 519 S.E.2d 73, 78 (1999) (quoting *State v. Moore*, 87 N.C. App. 156, 159, 360 S.E.2d 293, 295 (1987), *disc. review denied*, 321 N.C. 477, 364 S.E.2d 664 (1988)), *disc. review denied*, 351 N.C. 365, 542 S.E.2d 651 (2000).

The evidence in the record tends to show that defendant traveled to the store with Chambers, Smith, and Neely and suggested that they rob the store. Defendant entered the store along with Smith, shot Mr. and Mrs. Patel, took money from the cash register, and left the scene in the vehicle along with the others. There is also evidence that defendant then traveled with the group to Chambers' apartment where they divided the money and defendant purchased drugs from Chambers and Neely. The evidence sufficiently supports a conclusion that defendant acted in concert with Chambers, Neely, and Smith to commit the armed robbery. Defendant has failed to demonstrate that instructing the jury on acting in concert constituted plain error. Accordingly, the trial court did not commit plain error in instructing the jury on acting in concert. This assignment of error is without merit.

[4] Defendant next argues the trial court committed plain error in allowing Mrs. Patel to identify defendant as the shooter. Defendant contends that Mrs. Patel lacked sufficient personal knowledge to allow her to make such an identification. Again, defendant must show plain error by establishing that the trial court committed error, and that absent that error, the jury probably would have reached a different result. *Jones*, 137 N.C. App. at 226, 527 S.E.2d at 704.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge

of the matter." N.C. Gen. Stat. § 8C-1, Rule 602 (2001). This rule is designed to prevent a witness from testifying to a fact about which he has no direct, personal knowledge. *State v. Cole*, 147 N.C. App. 637, 645, 556 S.E.2d 666, 671 (2001), *cert. denied*, 356 N.C. 169, 568 S.E.2d 619 (2002). "[P]ersonal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." *Id.* (quoting N.C. Gen. Stat. § 8C-1, Rule 602 (Commentary) (1999)).

Mrs. Patel testified at trial that she recognized defendant as the friend of a woman who lived behind the store. She stated that she was certain of her identification because of defendant's eyes and the contour of his face. She also stated that defendant had come in the store previously and had last been in the store three or four days before the robbery. Mrs. Patel was also able to recognize several physical characteristics of defendant which she gave to the police in her statement.

The evidence in the record shows that Mrs. Patel had personal knowledge of defendant stemming from her perception of him gained during the robbery. The extent of Mrs. Patel's identification and the discrepancy between Mrs. Patel's testimony regarding defendant's height and his actual height go to the weight of the evidence rather than to its admissability and is a matter to be considered by the jury. *See State v. Bass*, 280 N.C. 435, 452, 186 S.E.2d 384, 396 (1972). Mrs. Patel's perception of defendant during the robbery was sufficient to provide a basis for her in-court identification of defendant. Defendant has failed to demonstrate that the jury probably would have reached a different result had Mrs. Patel's identification testimony been excluded or that inclusion of the testimony created a miscarriage of justice. The trial court did not commit plain error in permitting Mrs. Patel to identify defendant at trial. This assignment of error is without merit.

[5] Defendant finally argues that the trial court erred by imposing a consecutive sentence for his robbery conviction. Defendant contends the trial court unconstitutionally punished him for exercising his right to trial by jury by imposing a consecutive sentence instead of a concurrent sentence for the robbery charge. The trial transcript shows that the trial court stated that in order to "flesh out and put some further definiteness to the plea offer . . . if you accept the plea . . . the time for the robbery would run with or at the same time as the time for the murder and the attempted murder." Defendant refused the plea bargain and after he was convicted, the trial court

sentenced him to a minimum of 95 months and a maximum of 123 months in prison for robbery with a dangerous weapon to run consecutively with the sentences for murder and attempted murder.

Our courts have clearly established that a defendant may not be punished for exercising his constitutional rights to a jury trial. *State v. Boone*, 293 N.C. 702, 712-13, 239 S.E.2d 459, 465 (1977).

> Where it can reasonably be inferred from the language of the trial judge that the sentence was imposed at least in part because defendant did not agree to a plea offer by the state and insisted on a trial by jury, defendant's constitutional right to trial by jury has been abridged, and a new sentencing hearing must result.

*State v. Cannon*, 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990).

The trial court's decision to state that it would impose a concurrent sentence as part of an accepted plea bargain was an effort to make the plea bargain more definitive and eliminate any question that defendant might have about the resulting sentence that the trial court would impose in its discretion. There is nothing in the record that indicates that the trial court imposed a consecutive sentence on defendant as punishment for his rejection of the plea offer. The transcript does not show that the trial court threatened to impose a harsher sentence if defendant rejected the plea offer or that, at sentencing, the trial court indicated it was imposing a harsher sentence as a result of defendant's rejection of the plea offer. The trial court was not limited by the initial terms of the plea bargain and was free to impose a fair and appropriate sentence after the jury returned a guilty verdict. Defendant has failed to show the existence of a reasonable inference that the trial court imposed a consecutive sentence as a result of defendant's decision to exercise his right to a jury trial. This assignment of error is without merit.

No error.

Judges TYSON and CALABRIA concur.