IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-143

Filed: 1 December 2020

Wayne County, Nos. 17 CRS 55365-67, 18 CRS 2290

STATE OF NORTH CAROLINA

v.

AIJALON DERICE DOVE

Appeal by defendant from judgments entered 29 July 2019 by Judge Imelda J. Pate in Wayne County Superior Court. Heard in the Court of Appeals 22 September 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Marilyn G. Ozer for defendant-appellant.*

ZACHARY, Judge.

Sammy Evans was visiting a friend when he was fatally wounded by gunfire. A police investigation into Evans's death led to the arrest of Defendant Aijalon Derice Dove, who was convicted of first-degree felony murder, possession of a firearm by a felon, discharging a weapon into occupied property, and felonious possession of cocaine.

On appeal, Defendant argues that the trial court (1) plainly erred by instructing the jury on the doctrine of acting in concert, and (2) erred by admitting

lay opinion testimony that usurped the role of the jury. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error.

## *Background*

On 19 July 2019, Defendant's case came on for jury trial in Wayne County Superior Court, the Honorable Imelda J. Pate presiding. The State's evidence tended to show that on the evening of 21 November 2017, Sammy Evans was visiting the home of a friend, Renee Thompson, and the two of them were doing laundry. The washer and dryer were located on the enclosed back porch. While Thompson went to fold clothes in the bedroom, Evans stepped out back to smoke some marijuana.

Shortly after going into the bedroom, Thompson heard six gunshots, fired in quick succession, and Thompson and her other visitors took cover. When the shooting stopped, Thompson and her daughter found Evans lying in a pool of blood on the enclosed back porch, and Thompson called 911. The house, some property inside the house, and Thompson's daughter's van were damaged by the gunfire.

Law enforcement officers and EMS responded to the call. EMTs pronounced Evans dead at the scene. Law enforcement officers found seven shell casings along the edge of the property, and spent projectiles inside the van and the washing machine. Surveillance cameras captured Defendant near the scene of the crime with his friend, Octavious, and showed the license plate number of Defendant's car.

Footage also showed Defendant carrying a gun.[1] Later that morning, after finding Defendant's vehicle at the Econo Lodge Inn, law enforcement officers executed a search warrant for Defendant's hotel room, where they discovered a loaded gun and some cocaine. A forensic scientist in the firearms unit of the North Carolina State Crime Laboratory testified that his examination of the cartridge cases found at Thompson's house revealed that they were from 9mm Luger bullets, which were fired from the gun found in Defendant's hotel room.

Defendant's evidence painted an entirely different picture. He testified that he and Octavious left Bob's No. 2, a local game room and convenience store, to visit Octavious' grandmother at Thompson's house on North Herman Street. Octavious drove Defendant's mother's car, and parked in the Piggly Wiggly parking lot. From there, the men walked toward Thompson's house. As they were walking, Defendant stopped to urinate in the bushes while Octavious went on without him. When Defendant heard gunshots, he ran back to the car. Octavious ran back to the car as well, and they returned to Bob's No. 2. Defendant eventually left to meet his girlfriend at the Econo Lodge Inn. While he was at the Econo Lodge, Octavious telephoned Defendant, and Defendant retrieved the gun from the car. However, Defendant testified that he did not know there was a gun in the car prior to the call from Octavious, and that he did not know Evans.

---

[1] On appeal, Defendant challenges the admissibility of this evidence.

Octavious' testimony conflicted with Defendant's.[2] Octavious testified that Evans owed money to Defendant's brother, and that he and Defendant went to get the money from Evans. Octavious drove Defendant's car to the Piggly Wiggly parking lot, and the two men walked to Thompson's house. Octavious said that Defendant did not stop to urinate in the bushes. Instead, because Octavious was not allowed in Thompson's house, he waited at the neighbor's while Defendant went to collect the money from Evans. Shortly after Defendant left Thompson's house, Octavious heard gunfire and saw Defendant run past him. Octavious followed Defendant to the car, and Octavious then drove them back to Bob's No. 2. Octavious further testified that he did not call Defendant that evening; that neither he nor Defendant had a gun; and that Octavious did not check on his aunt and grandmother afterward.

The jury found Defendant guilty of first-degree murder under the theory of felony murder, possession of a firearm by a felon, discharging a weapon into occupied property, and felonious possession of cocaine. For the offense of first-degree felony murder, the trial court sentenced Defendant to life imprisonment without parole in the North Carolina Division of Adult Correction. The trial court arrested judgment on the charge of discharging a firearm into occupied property, as the underlying felony supporting the conviction for felony murder. For the offenses of possession of a firearm by a felon and felony possession of cocaine, the trial court sentenced

---

[2] At the time of Defendant's trial, Octavious was also charged with the first-degree murder of Evans.

Defendant to 19-32 months' imprisonment set to begin at the expiration of his sentence for first-degree murder.

Defendant gave notice of appeal in open court.

## *Discussion*

On appeal, Defendant argues that the trial court (1) "committed plain error by instructing the jury [that] [D]efendant could be found guilty of the murder and shooting into an occupied dwelling based on the theory of acting in concert"; and (2) "erred by allowing a witness to testify to her opinion on an issue [of] which she had no personal understanding and that was properly in the province of the jury." We address each argument in turn.

## *I. Jury Instructions*

Defendant first contends that the trial court plainly erred by instructing the jury on the theory of acting in concert, in that the evidence offered at trial did not support this instruction.

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). Thus, because "[D]efendant failed to object to the jury instruction at trial, he must show plain error by establishing that the trial court committed error, and that absent that error, the

jury probably would have reached a different result." *State v. Poag*, 159 N.C. App. 312, 321-22, 583 S.E.2d 661, 668, *disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (2003).

It is axiomatic that in order to constitute plain error justifying a new trial, the error must "be so fundamental that [the] defendant, in light of the evidence, the issues and the instructional error, could not have received a fair trial." *State v. Abraham*, 338 N.C. 315, 345, 451 S.E.2d 131, 147 (1994). "[A] defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and internal quotation marks omitted). "It is generally prejudicial error for the trial court to instruct the jury on a theory of [the] defendant's guilt that is not supported by the evidence." *Poag*, 159 N.C. App. at 322, 583 S.E.2d at 668.

Under the doctrine of acting in concert, "[a] person may be found guilty of committing a crime if he is at the scene acting together with another person with a common plan to commit the crime, although the other person does all the acts necessary to commit the crime." *State v. Jefferies*, 333 N.C. 501, 512, 428 S.E.2d 150, 156 (1993); *accord State v. Joyner*, 297 N.C. 349, 356, 255 S.E.2d 390, 395 (1979) ("To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose."). As our Supreme Court has explained, "[i]t

is not . . . necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle[.]" *Joyner*, 297 N.C. at 357, 255 S.E.2d at 395.

In the instant case, there was sufficient evidence to support the State's theory that Defendant was guilty by acting in concert with Octavious, and to justify instructing the jury on the doctrine of acting in concert. The evidence at trial tended to show that Defendant, Defendant's brother, and Octavious met up at Bob's No. 2, a local game room and convenience store. Defendant and Octavious were identified together there in the surveillance video footage, and Defendant was pictured holding a gun. After Octavious and Defendant's brother discussed the fact that Evans owed money to Defendant's brother, Defendant's brother instructed Octavious and Defendant to collect the money. Evans was visiting the home of Octavious' aunt, Renee Thompson, on North Herman Street, and Evans's Cadillac was parked in the driveway. Rather than drive all the way to Thompson's home, Octavious parked Defendant's car in the parking lot of the Piggly Wiggly near her home, and the men walked from there. Defendant and Octavious were identified together in surveillance video footage from the Piggly Wiggly and in surveillance video footage from North Herman Street. When they arrived, Defendant entered Thompson's house alone, because Octavious was not allowed in the house.

After gunshots were fired, the men ran to the car, and Octavious drove Defendant to Bob's No. 2. Defendant and Octavious were identified together, fleeing the scene, on two surveillance videos. The gun that fired the bullet that killed Evans—which contained live rounds at the time it was discovered by police—was found in Defendant's hotel room hours after the shooting.

Taken together, and in light of the "heavy burden of plain error analysis" that a defendant is required to shoulder, *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001), we conclude that the evidence sufficiently supports the conclusion that Defendant acted in concert with Octavious in committing the charged offenses. Thus, the trial court did not err, much less plainly err, by instructing the jury on the doctrine of acting in concert. This argument lacks merit.

## II. Evidentiary Rule 602

Defendant next argues that the trial court erred in allowing Octavious's aunt, Renee Thompson, to testify that she believed that Defendant was holding a gun in his hand in video footage from a surveillance camera at Bob's No. 2 and from screen shots produced from that footage.

"[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion." *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). "A trial court abuses its

discretion if the ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Weldon*, 258 N.C. App. 150, 154, 811 S.E.2d 683, 687 (2018) (citation and internal quotation marks omitted). However, even if the trial court erred by allowing such testimony, the defendant must show that the error was prejudicial. *See* N.C. Gen. Stat. § 15A-1443(a); *State v. Buie*, 194 N.C. App. 725, 733, 671 S.E.2d 351, 356, *disc. review denied*, 363 N.C. 375, 679 S.E.2d 135 (2009).

It is well established that "the jury is charged with determining what inferences and conclusions are warranted by the evidence." *Buie*, 194 N.C. App. at 730, 671 S.E.2d at 354. "Ordinarily, opinion evidence of a non-expert witness is inadmissible because it tends to invade the province of the jury." *State v. Fulton*, 299 N.C. 491, 494, 263 S.E.2d 608, 610 (1980). However, Rule 701 permits a lay opinion witness to offer "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701.

Relatedly, Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." *Id.* § 8C-1, Rule 602. "The Commentary to Rule 602 further provides that the foundation requirements may, of

course, be furnished by the testimony of the witness h[er]self; hence personal knowledge is not an absolute but may consist of what the witness thinks [s]he knows from personal perception." *State v. Harshaw*, 138 N.C. App. 657, 661, 532 S.E.2d 224, 227 (internal quotation marks omitted), *disc. review denied*, 352 N.C. 594, 544 S.E.2d 793 (2000).

Defendant contends that Thompson's "opinion of what can be seen in a video is inadmissible as she was in no better position to know what the video showed than the jurors," and that "[t]here is a reasonable possibility that if the trial court had granted Defendant's motion to strike [Thompson's] opinion testimony a different result would have been reached at trial."[3]

It is undisputed that Thompson's testimony that Defendant was holding a gun at Bob's No. 2 on the evening of Evans's death was not based on Thompson's firsthand knowledge or perception, but rather solely on her viewing of surveillance video footage and screen shots extracted from the video footage. Thompson was not at the scene, and instead relied upon the same footage shown to the jury. Indeed, Thompson was clearly in no better position to correctly determine what Defendant was holding

---

[3] The State notes that "Defendant did not specify the basis of his objection at trial," without further analysis or argument. While a party seeking to preserve an issue for appellate review "must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make," N.C.R. App. P. 10(a)(1), stating the specific grounds for the objection is necessary only "if the specific grounds were not apparent from the context." *Id*. Having reviewed Thompson's testimony and the prosecutor's line of questioning, we are satisfied that the objection to Thompson's testimony was "apparent from the context." *See State v. Phillips*, ___ N.C. App. ___, ___, 836 S.E.2d 866, 873 (2019).

in his hand than the jury. *See State v. Belk*, 201 N.C. App. 412, 418, 689 S.E.2d 439, 443 (2009), *disc. review denied*, 364 N.C. 129, 695 S.E.2d 761 (2010). Thus, the admission of Thompson's testimony was error.

Nonetheless, Defendant must demonstrate that he was prejudiced by this error by showing that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" N.C. Gen. Stat. § 15A-1443(a). After careful review, we conclude that Defendant has not satisfied this burden.

In the instant case, there was substantial other evidence on which the jury could base a finding of Defendant's guilt. Octavious testified that Evans owed money to Defendant's brother, and that Defendant's brother instructed them to collect on the debt just before they left Bob's No. 2. The State effectively traced Defendant's trek with Octavious from Bob's No. 2 to Thompson's home, his arrival at the scene just before the shooting, and his quick return to Bob's No. 2. The jurors also viewed the surveillance videos and screen shots in which Defendant and Octavious were identified together at Bob's No. 2 and along roads leading to Thompson's home, as well as the expended cartridge casings that officers found bordering the edge of Thompson's property. A forensics expert testified that these casings were fired from the gun discovered in Defendant's hotel room. Moreover, Thompson's challenged

testimony was minimal and brief. The prosecutor did not linger on this issue, only asking Thompson once what Defendant was holding.

In sum, even if the jurors credited Thompson's testimony on this point, we are not convinced that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" N.C. Gen. Stat. § 15A-1443(a). Accordingly, this final argument must fail.

### *Conclusion*

Defendant failed to show that the trial court plainly erred by instructing the jury on the doctrine of acting in concert, and failed to demonstrate that he was prejudiced by the trial court's admission of Thompson's testimony.

NO ERROR.

Chief Judge McGEE and Judge ARROWOOD concur.