STATE OF NORTH CAROLINA v. JEFFREY TREMAINE WILLIAMS

No. COA06-1420

(Filed 21 August 2007)

**1. Constitutional Law— right to confrontation—statements to witness—nontestimonial**

The admission of statements made by a murder victim to the witness did not violate defendant's right to confront the witnesses against him. The statements were nontestimonial: they were made during the course of a private conversation, outside the presence of any police officer and before a crime was committed, and without any indication of thought of a future trial.

**2. Evidence— statements to witness—present sense impressions**

The trial court did not err by admitting as presence sense impressions testimony about the witness's telephone conversations with a murder victim. Moreover, there was other testimony to substantially the same subject matter without objection.

**3. Evidence— federal plea bargain—not relevant**

The trial court did not abuse its discretion in a first-degree murder prosecution by not allowing a witness to be cross-examined about his federal plea bargain. There was no showing that the witness received anything in exchange for his testimony against defendant.

**4. Homicide— shooting during armed robbery—evidence of causation by defendant—sufficient**

There was sufficient evidence that defendant was the perpetrator of a first-degree murder committed in the course of an armed robbery where defendant argued that the evidence showed that the victim was shot by his own weapon, but it was reasonable for the jury to infer from the evidence that an act by defendant caused the death.

**5. Criminal Law— acting in concert—victim shooting himself**

The trial court's correct instruction on acting in concert in a first-degree murder and felony murder prosecution cured the improper argument by the State that defendant would be guilty under an acting in concert theory even if the victim pulled the trigger.

**6. Homicide— felony murder—victim shooting himself— State's argument—error cured by instructions**

Any error in an argument by the State that it did not matter under the felony murder rule whether the victim or the defendant pulled the trigger was cured by the court's instructions.

**7. Criminal Law— deadlocked jury—additional instruction on acting in concert—no error**

The trial court did not express an opinion on defendant's guilt by giving an additional instruction on acting in concert after the failure of the jury to come to a unanimous decision (there had been an earlier inquiry from the jury). The court acted appropriately under the totality of the circumstances in giving the additional instruction.

**8. Criminal Law— deadlocked jury—inquiry and instruction— verdict not coerced**

The trial court did not impermissibly coerce a verdict by giving an additional instruction ex mero motu after the jury deadlocked. The instruction given was not in error, and the court's inquiry into the numerical division was not an inquiry into whether the majority favored conviction.

Appeal by Defendant from judgment dated 31 March 2006 by Judge William C. Gore, Jr. in Superior Court, Johnston County. Heard in the Court of Appeals 6 June 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan Babb, for the State.*

*Crumpler, Freedman, Parker, and Witt, by Vincent F. Rabil, for Defendant.*

McGEE, Judge.

Jeffrey Tremaine Williams (Defendant) was convicted on 31 March 2006 of first-degree murder. Defendant was convicted under the felony murder rule, with the underlying felony being robbery with a dangerous weapon. The trial court sentenced Defendant to life imprisonment without parole. Defendant appeals.

At trial, Michelle Howell (Ms. Howell) testified that she was a friend of Davie Stancil (the victim) and that she talked with him by telephone around 10:30 p.m. on 9 May 2004. Ms. Howell testified that

STATE v. WILLIAMS

[185 N.C. App. 318 (2007)]

they spoke for about ten or fifteen minutes and then hung up because Ms. Howell's cell phone was "going dead."

Ms. Howell testified that the victim called her on her home telephone about ten minutes later. She further testified, over Defendant's objection, that the victim said, "I think somebody just tried to get me." Ms. Howell continued her testimony, over Defendant's objection, as to what the victim had said to her. Ms. Howell testified as follows: the victim said that a woman he did not recognize had knocked on his door and told him that her car had broken down, and that she was looking for Patricia Johnson. The victim told the woman he did not know a Patricia Johnson. The victim further said that the woman had refused the victim's offer to use his telephone. The victim saw "a bulge in the front of her pants" and he then went inside to get his gun. He returned to the door and continued talking with the woman. The woman asked if she could come back around 11:30 p.m., and he said okay, and she left. Ms. Howell further testified that her conversation with the victim ended around 12:15 a.m. when the victim told Ms. Howell: "[H]old on for a minute. . . . I'm going to just call you back in a minute[.]" However, the victim never called Ms. Howell back.

Brandie Spivey (Ms. Spivey) testified that in 2004 she had been Defendant's girlfriend. Ms. Spivey testified that Defendant sent her to the victim's house around 6:00 p.m. on 9 May 2004 to see if a car was parked at the victim's house and to see if anyone was at home. Ms. Spivey did not see a car. She then knocked on the door, but no one answered, and Ms. Spivey walked back to her house.

Ms. Spivey testified that she returned to the victim's house around 9:00 p.m. or 9:30 p.m., and knocked on the door. Ms. Spivey testified that Defendant had again sent her to the victim's house to see if she could "make entrance" to the victim's house so that "[Defendant] could get inside and rob [the victim]." Ms. Spivey further explained that Defendant sent her to the victim's house as a decoy pursuant to a plan to rob the victim, and that Defendant knew the victim had money and drugs. When the victim came to the door, Ms. Spivey gave him a false name, told him her car had broken down, and told him that she was looking for someone. Ms. Spivey and the victim continued to have a conversation for about ten minutes. Ms. Spivey asked the victim if she could come back later, and he told her to come back between 11:00 p.m. and 12:00 midnight.

Ms. Spivey testified that she returned to the victim's house with Defendant around 11:00 p.m. Ms. Spivey testified that she knocked on

the door while Defendant knelt on the side of the steps where the victim could not see him. Just before the victim opened the door, Ms. Spivey heard the victim say to someone over the telephone, "I'll call you back." When the victim opened the door, Ms. Spivey testified that Defendant pushed his way into the victim's house and Defendant and the victim began to "tussle." Ms. Spivey further testified that Defendant and the victim continued "wrestling for [a] gun" in the victim's bedroom. Ms. Spivey testified she "was told it was a 9 millimeter[,]" and the trial court instructed the jury not to consider what Ms. Spivey had been told. Ms. Spivey also testified she saw a second, smaller gun that Defendant was using to hit the victim. During the fight, Ms. Spivey heard a gunshot and then "saw blood everywhere[.]" Ms. Spivey did not testify that she saw who fired the gunshot.

Wayne Bell (Mr. Bell) testified that he met Defendant in 2005 when the two of them were incarcerated in the Johnston County jail. Mr. Bell testified that Defendant told him the following:

[Defendant] was telling me about his charge. It was his girlfriend went to, was going with this drug dealer and they was planning to rob him. The girlfriend was already at the house when [Defendant] entered the house. [Defendant] and the drug dealer got to tussling over the gun. The gun went off. Shot the drug dealer in his left leg. The girlfriend was in the other room. She didn't know what, who had shot who at the time. [Defendant] got the gun and left with it after he got some drugs and money from the drug dealer. And [Defendant] told me don't nobody know where that gun at but him.

[Defendant's] girlfriend later on, she changed her statement and said [Defendant] done it. But [Defendant] told me out of his own mouth that [Defendant] was the one that did the shooting.

During cross-examination of Mr. Bell, Defendant sought to introduce a motion for downward departure and a plea agreement, both pertaining to unrelated federal criminal charges against Mr. Bell. The documents demonstrated that the federal prosecutor dismissed several charges against Mr. Bell and that Mr. Bell received a reduced sentence for his cooperation with the federal prosecutor. However, the trial court sustained the State's objections to the introduction of this evidence.

Deputy Chief Medical Examiner Thomas Clark (Dr. Clark) testified that he performed an autopsy on the victim. Dr. Clark testified

that the victim had a gunshot wound in his left leg that tore a major artery in the victim's leg, and that the victim had blunt force injuries on his face, head, shoulder, back, and abdomen. Dr. Clark further testified that the gunshot wound "would not have immediately caused [the victim's] death. It would probably have taken several minutes for [the victim] to bleed out to the point of losing consciousness."

At the close of the State's evidence, Defendant moved to dismiss the charge of first-degree murder. The trial court denied Defendant's motion. Defendant did not present evidence. Defendant renewed his motion to dismiss, and the trial court again denied the motion.

The following colloquy regarding acting in concert occurred during the charge conference:

THE COURT: . . . . I will also include the acting in concert instruction at 202.10. Or is the [S]tate requesting that?

[THE STATE]: We would request.

THE COURT: You would? I've just got it in here. I don't—I'm just asking.

[THE STATE]: Well . . .

THE COURT: I think all the evidence is that . . . [D]efendant did all of the acts personally.

[THE STATE]: [Defendant] just used [Ms. Spivey], you know, as a decoy to get his way in. [Ms. Spivey] . . . knew about the plan, had some knowledge. That's the only reason I would say it's appropriate but we can live without it, also.

THE COURT: What is the defense position on it?

[DEFENSE COUNSEL]: Your Honor, I object to it. [Ms. Spivey] [is] not even . . . indicted.

THE COURT: All right. If you object to it, [and] the [S]tate doesn't care, I won't give it, sir.

The trial court instructed the jury, *inter alia,* on first-degree murder on the basis of malice, premeditation, and deliberation, and also under the felony murder rule. The jury began its deliberations and sent the following note to the trial court: "One, could we get a definition of first-degree murder? Two, reread the difference between malice, premeditation, and deliberation versus first-degree felony murder

rule." In response, the trial court re-read the substantive instruction to the jury without objection.

After this instruction, a juror tendered the following note to the trial court: "If I am not entirely convinced that . . . [D]efendant pulled the trigger but I do believe he was at the scene of the crime, can I still return a guilty verdict?" In response, the trial court instructed the jury as follows: "[A]ll of you must decide the case based on the evidence that has been presented and on the law that I have given you. I cannot specifically answer this question for you." The trial court also re-instructed the jury on the presumption of innocence, reasonable doubt, and the State's burden to prove the identity of Defendant as the perpetrator of the crime.

The jury continued its deliberations. The jury subsequently submitted the following question to the trial court: "[W]e would like to request to have the first-degree murder rule reread, if possible. If not, we would need the whole law reread." Defendant requested that, in addition to a re-instruction on the felony murder rule, the trial court also re-instruct the jury regarding the burden of proof. The trial court denied Defendant's request and instructed the jury on the felony murder rule for the third time. The jury resumed its deliberations and later informed the trial court that "[w]e cannot come to a unanimous verdict on this decision." The trial court then inquired about the numerical breakdown of the deadlock:

> THE COURT: Without giving me any other information, can you just give me two numbers representing those who are one way and those who are another?
>
> FOREPERSON MORGAN: Eleven and one.

The trial court then stated the following outside the presence of the jury:

> Pursuant to [N.C. Gen. Stat. §] 15A-1234, at this time, the Court proposes to charge the jury as to the law relating to acting in concert. . . . Now, the charge I will give is the acting in concert charge as relates to the offense of robbery with a dangerous weapon. Because I intend to charge, I want to give counsel an opportunity to argue to the jury.

Defendant objected and requested an instruction to the effect that a person's mere presence at the scene of a crime does not make him guilty of any crime, even if he was aware the crime was being com-

mitted and made no effort to prevent it. The trial court allowed counsel for the State and Defendant to present new arguments to the jury. The State argued, in part, as follows:

> In the case before you, you've heard all the evidence of [Ms.] Spivey and [Defendant]. You've heard the testimony and the [S]tate's contention that there was a common plan to go to [the victim's] house that night to rob him. And during the course of that robbery, [the victim] was killed. The [S]tate has argued the felony murder theory that during the course of the robbery, if someone is killed, that's felony murder.

> It doesn't matter who pulled the trigger. If [Ms.] Spivey pulled the trigger, if [the victim] pulled the trigger, the trigger was pulled during a fight over a gun and it went off, they were acting together in concert to rob [the victim]. And . . . [the victim] was killed during the course of that armed robbery. So we're talking about acting in concert and felony murder.

Following arguments of counsel, the trial court instructed the jury on acting in concert and mere presence. The jury returned a verdict of guilty of first-degree murder under the felony murder rule.

I.

[1] Defendant first argues the trial court violated his constitutional right to confront the witnesses against him by allowing Ms. Howell to testify regarding a conversation she had with the victim. However, because Defendant failed to raise any constitutional objection to this testimony at trial, this argument is not properly before us. *See State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) (recognizing that "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.").

Nevertheless, even assuming *arguendo* that Defendant had preserved this issue, Defendant's argument lacks merit. Defendant argues the victim's "statements to [Ms.] Howell were testimonial because [the victim] must have expected them to be relayed to law enforcement for ultimate use at trial should something happen to [the victim]."

In *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-

examination." *Id.* at 68, 158 L. Ed. 2d at 203. However, "[w]here non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[.]" *Id.* In *Davis v. Washington*, 547 U.S. ——, 165 L. Ed. 2d 224 (2006), the Supreme Court clarified that

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at ——, 165 L. Ed. 2d at 237. In *Davis*, the Supreme Court also noted: "As in *Crawford*[,] . . . our holding today makes it unnecessary to consider whether and when statements made to someone other than law enforcement personnel are 'testimonial.' " *Id.* at —— n. 2, 165 L. Ed. 2d at 238 n. 2.

While *Crawford* and *Davis* do not speak to the issues of when and whether statements made to individuals other than police and their agents are testimonial, our Court has addressed these issues. In *State v. Lawson*, 173 N.C. App. 270, 619 S.E.2d 410 (2005), *disc. review denied*, 360 N.C. 293, 629 S.E.2d 276 (2006), the victim testified that another individual had told him that the defendant was his attacker. *Id.* at 274, 619 S.E.2d at 413. Our Court recognized that the statements to the victim "were not made during any police investigation, rather they were made during a private conversation . . . and outside the presence of any police officer." *Id.* at 276, 619 S.E.2d at 413. Our Court held that when the individual made these statements to the victim, "it was unlikely that . . . [the individual] was thinking in terms of anything outside the scope of their private conversation—certainly not about testifying as to this matter before the court." *Id.* at 276, 619 S.E.2d at 414.

Likewise, in the present case, the statements the victim made to Ms. Howell were made during the course of a private conversation, outside the presence of any police officer. They were, in fact, made before any crime had occurred. There was no indication that the statements were made with the thought of a future trial in mind. Therefore, pursuant to *Lawson*, the statements at issue in the present case were nontestimonial. Moreover, applying the recent test articu-

lated in *Davis*, these statements were not made under circumstances that objectively indicated the purpose was to prove events potentially relevant to a later criminal prosecution. *See Davis*, 547 U.S. at ——, 165 L. Ed. 2d at 237. Therefore, we hold these statements were non-testimonial, and the trial court did not err by allowing the admission of this testimony. For the same reason, the admission of this testimony did not amount to plain error as Defendant also argues. *See State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied, Torain v. North Carolina*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986) (recognizing that "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all.").

[2] Defendant also argues the trial court abused its discretion by admitting the testimony because the statements did not qualify as present sense impressions. We disagree. N.C. Gen. Stat. § 8C-1, Rule 803(1) (2005) provides that the following type of statement is not excluded by the hearsay rule: "Present Sense Impression.—A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Defendant argues that Ms. Howell testified to a telephone conversation about earlier events which were no longer occurring at the time the victim spoke with Ms. Howell. However, according to Ms. Spivey's subsequent testimony, it appears that the victim was speaking with Ms. Howell immediately before Ms. Spivey and Defendant approached the victim's house, which was only about two hours after Ms. Spivey had talked with the victim the first time. Ms. Spivey testified that she first talked with the victim at his house between 9:00 p.m. and 9:30 p.m. Ms. Spivey testified that she returned to the victim's house with Defendant about 11:00 p.m. Just before the victim opened the door, Ms. Spivey heard the victim say the following to someone over the telephone: "I'll call you back." We hold that the trial court did not abuse its discretion by admitting the challenged statements as present sense impressions.

However, even assuming *arguendo* that the challenged statements were not admissible as present sense impressions, Ms. Spivey subsequently testified, without objection, to substantially the same subject matter. Therefore, Defendant lost the benefit of his earlier objection. *See State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) (holding that "[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost."). For the

STATE v. WILLIAMS

[185 N.C. App. 318 (2007)]

reasons stated above, we overrule the assignments of error grouped under this argument.

II.

[3] Defendant next argues the trial court deprived him of his constitutional right to confront and cross-examine the witnesses against him by not allowing Defendant to cross-examine Mr. Bell as to Mr. Bell's bias. Defendant sought to introduce a motion for downward departure and a plea agreement, both pertaining to unrelated federal criminal charges against Mr. Bell. The records demonstrated that the federal prosecutor dismissed several charges against Mr. Bell and that Mr. Bell received a reduced sentence for his cooperation with the federal prosecutor.

However, the documents did not demonstrate that Mr. Bell received concessions for his participation in this state criminal case against Defendant. The trial court specifically clarified this point:

THE COURT: Well, let me stop you. [Defense Counsel], . . . did it involve cooperation in this case?

[DEFENSE COUNSEL]: No. I said, what I, what I'm saying is this.

THE COURT: Well, I'm asking you, though. Did I misunderstand you or did you misunderstand me?

[DEFENSE COUNSEL]: I don't know—I may have misunderstood you. I don't know—

THE COURT: Did [Mr. Bell] get, is there some document somewhere that says this witness, Mr. Bell, got favorable treatment from the government for his cooperation in this instant case against [Defendant], the State v. Jeffrey Tremaine Williams?

[DEFENSE COUNSEL]: No, sir.

THE COURT: All right. Objection is sustained.

Accordingly, the records sought to be introduced by Defendant did not establish that Mr. Bell had entered into a plea bargain in return for his cooperation in the case against Defendant. Therefore, the trial court did not err by denying Defendant's request to cross-examine Mr. Bell as to those records.

Defendant argues the trial court erred because the documents related to Mr. Bell's federal criminal case indicated that "[Mr. Bell] has a propensity . . . to trade his way out of cases." However, "[t]he

right to cross examine a witness to expose the witness' bias is not unlimited." *State v. Hatcher*, 136 N.C. App. 524, 526, 524 S.E.2d 815, 816 (2000). " 'The trial judge may and should rule out immaterial, irrelevant, and incompetent matter.' " *State v. Jacobs*, 172 N.C. App. 220, 228, 616 S.E.2d 306, 312 (2005) (quoting *State v. Stanfield*, 292 N.C. 357, 362, 233 S.E.2d 574, 578 (1977)). "On appeal, the trial court's decision to limit cross-examination is reviewed for abuse of discretion, and 'rulings in controlling cross examination will not be disturbed unless it is shown that the verdict was improperly influenced.' " *Id.* (quoting *Hatcher*, 136 N.C. App. at 526, 524 S.E.2d at 816).

In the present case, Mr. Bell's propensity to bargain his way out of cases was irrelevant because there was no showing that Mr. Bell received anything in exchange for his testimony against Defendant. Therefore, the trial court did not abuse its discretion or violate Defendant's constitutional rights by refusing to allow this cross-examination. Accordingly, we overrule these assignments of error.

III.

**[4]** Defendant next argues the trial court violated his constitutional rights to due process and a fair trial by denying his motions to dismiss. We first note that Defendant did not make these particular constitutional arguments to the trial court. Therefore, these arguments are not properly before us. *See Lloyd*, 354 N.C. at 86-87, 552 S.E.2d at 607 (recognizing that "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.").

Defendant also argues the trial court erred by denying his motions to dismiss because there was insufficient evidence that Defendant was the perpetrator of the crime. On a motion to dismiss for insufficiency of the evidence, a trial court must determine "whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). A trial court views the evidence in the light most favorable to the State, drawing all inferences in the State's favor. *Id.* at 584, 461 S.E.2d at 663.

"When considering a motion to dismiss, the trial court is concerned 'only with the sufficiency of the evidence to carry the case to the jury; it is not concerned with the weight of the evidence.' " *State*

*v. Jackson*, 161 N.C. App. 118, 122, 588 S.E.2d 11, 14-15 (2003) (quoting *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983)). "[T]he credibility of a witness's testimony and the weight to be given that testimony is a matter for the jury, not for the court, to decide." *Id.* at 122, 588 S.E.2d at 14. However, if the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." *State v. Malloy*, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).

Pursuant to N.C. Gen. Stat. § 14-17 (2005), "[a] murder . . . which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree[.]" "In accordance with this statute, the two elements of first-degree (felony) murder are: 1) a murder that was 2) committed in the perpetration of a felony." *State v. Bumgarner*, 147 N.C. App. 409, 413, 556 S.E.2d 324, 328 (2001).

Defendant argues that "all the physical evidence, coupled with the only eye-witness testimony of [Ms.] Spivey, establishes that the victim was shot in the leg by his own weapon, a 9mm pistol." Therefore, Defendant argues that the State did not prove that the victim's death was caused by an act of Defendant. We disagree.

Mr. Bell testified that "[Defendant] told me out of [Defendant's] own mouth that [Defendant] was the one that did the shooting." Moreover, Ms. Spivey testified that after Defendant pushed his way into the victim's house, Defendant and the victim began to "tussle." Ms. Spivey further testified that Defendant and the victim continued "wrestling for [a] gun" in the victim's bedroom. Ms. Spivey testified she "was told it was a 9 millimeter[,]" and the trial court instructed the jury not to consider what Ms. Spivey had been told. Ms. Spivey also testified she saw a second, smaller gun that Defendant was using to hit the victim. During the fight, Ms. Spivey heard a gunshot and then "saw blood everywhere[.]" Ms. Spivey did not testify that she saw who fired the gunshot. Based upon the testimony of Ms. Spivey, it is reasonable to infer that Defendant shot the victim, either with Defendant's own gun or with the victim's gun. We hold that the testimony of Mr. Bell and Ms. Spivey was sufficient evidence from which the jury could find that an act by Defendant caused the victim's death. Accordingly, the trial court did not err by denying Defendant's motions to dismiss.

IV.

**[5]** Defendant next argues the trial court deprived him of his constitutional rights to due process and a fair trial by failing to intervene *ex mero motu* to strike the State's closing argument that Defendant would be guilty of first-degree murder even if the victim had pulled the trigger. Where a defendant does not object at trial to the State's closing argument, "our standard of review is whether the [State's] arguments were so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *State v. Barden*, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002), *cert. denied, Barden v. North Carolina*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). However, " 'where the trial court's instructions to the jury cure the [State's] alleged improper arguments, the court's failure to correct the arguments *ex mero motu* will not constitute prejudicial error.' " *State v. Poag*, 159 N.C. App. 312, 319, 583 S.E.2d 661, 667 (quoting *State v. Shope*, 128 N.C. App. 611, 614, 495 S.E.2d 409, 412 (1998)), *disc. review denied*, 357 N.C. 661, 590 S.E.2d 857 (2003).

Under a theory of acting in concert,

> " '[i]f "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof." ' "

*State v. Mann*, 355 N.C. 294, 306, 560 S.E.2d 776, 784 (citations omitted), *cert. denied, Mann v. North Carolina*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002).

Defendant contends that the State's argument "was grossly improper because it not only misstated N.C. law requiring [that] an act attributable to [D]efendant cause[d] the death[,] [but it also] allowed the jury to circumvent the glaring insufficiency of evidence as to how the victim died." However, despite Defendant's argument to the contrary, we have already held that there was sufficient evidence that Defendant killed the victim. The testimony of Ms. Spivey and Mr. Bell provided substantial evidence from which the jury could have found that Defendant shot the victim, either with Defendant's gun or with the victim's gun. As to Defendant's contention that the State's argument misstated North Carolina law, Defendant relies on *State v. Jones*, 290 N.C. 292, 225 S.E.2d 549 (1976), for the following proposi-

tion: "To warrant a conviction for homicide the State must establish that the act of the accused was a proximate cause of the death." *Id.* at 298, 225 S.E.2d at 552. Defendant also relies upon *State v. Bonner*, 330 N.C. 536, 411 S.E.2d 598 (1992), in which our Supreme Court held that the felony murder rule does not apply to hold a defendant liable for the killing of the defendant's co-felon by the lawful acts of a law enforcement officer resisting the criminal scheme. *Id.* at 542, 411 S.E.2d at 601. In *Bonner*, our Supreme Court recognized that its ruling was

> consistent with the prevailing rule in the overwhelming majority of states in this country—that "for a defendant to be held guilty of murder, it is necessary that the act of killing be that of the defendant, and for the act to be his, it is necessary that it be committed by him or by someone acting in·concert with him."

*Id.* at 542-43, 411 S.E.2d at 601-02 (quoting Erwin S. Barbre, Annotation, *Criminal Liability Where Act of Killing Is Done By One Resisting Felony or Other Unlawful Act Committed by Defendant*, 56 A.L.R.3d 239, § 2 at 242 (1974)).

In the present case, the victim cannot be said to have been acting in concert with Defendant or Ms. Spivey. Rather, like the law enforcement officer in *Bonner*, the victim's actions were in direct opposition to the criminal scheme of Defendant and Ms. Spivey. *See Bonner*, 330 N.C. at 542, 411 S.E.2d at 601 (recognizing that the law enforcement officer did not "act in concert with [the defendants and their accomplices] in a manner that furthered a common design or purpose. On the contrary, his every action was in direct opposition to the criminal scheme in which [the] defendants and their accomplices were engaged."). Therefore, it was improper for the State to argue that Defendant would be guilty under a theory of acting in concert even if the victim had pulled the trigger. However, following this improper argument, the trial court instructed the jury on acting in concert and the trial court's instructions correctly stated the law regarding acting in concert. Therefore, the trial court's subsequent instructions cured the improper statement made by the State. *See Poag*, 159 N.C. App. at 320, 583 S.E.2d at 668 (holding that "[t]he trial court's instructions to the jury regarding acting in concert correctly stated the law and cured the improper statements made by the State during closing arguments.").

[6] In its closing argument, the State also argued that under the felony murder rule, it did not matter whether Defendant or the victim

pulled the trigger. This was also improper, as North Carolina adheres to the agency theory, and not the proximate cause theory, of felony murder. *See Bonner*, 330 N.C. at 542-44, 411 S.E.2d at 601-02.

> Under the agency theory of felony murder, a felon is not guilty of murder when the homicide is done by a person other than the felon or a co-felon. In other words, the agency theory limits the reach of the felony murder doctrine to homicides committed by the felon or a co-felon.

James W. Hilliard, *Felony Murder in Illinois—The "Agency Theory" vs. The "Proximate Cause Theory": The Debate Continues*, 25 S. Ill. U. L.J. 331, 344 (2001). In contrast,

> Under the proximate cause theory of felony murder, a felon is guilty of murder when a killing is committed by a person other than the felon or a co-felon. Indeed, the proximate cause theory attaches felony murder liability for any death proximately resulting from the felony, regardless of who actually killed the victim.

*Id.* at 346. Accordingly, in North Carolina, the felony murder rule only applies where the lethal act of a defendant, or someone acting in concert with a defendant, caused the death. *See Bonner*, 330 N.C. at 542-43, 411 S.E.2d at 601-02.

We have found few cases in other jurisdictions where courts have applied the proximate cause theory of felony murder to hold a defendant liable for the killing of the victim where the victim accidentally killed himself. In *State v. Stout*, 154 P.3d 1176, 1182 (Kan. Ct. App. 2007), the Kansas Court of Appeals recognized:

> In this situation it really does not matter whether the victim is shot by himself or herself or by the co-felon. The entire incident in this case, from [the co-felon's] breaking down [the victim's] door to the wrestling where each participant is shot, was a continuous felonious event without any break in the chain of causation.

In *Miers v. State*, 251 S.W.2d 404, 407-08 (Tex. Crim. App. 1952), the Court of Criminal Appeals of Texas held that the fact that the victim may have accidentally shot and killed himself did not provide the defendant with a defense because the defendant "set in motion the cause which occasioned the death of [the] deceased[.]" In *People v. Payne*, 194 N.E. 539, 543 (Ill. 1935), the Illinois Supreme Court recognized that "[i]t reasonably might be anticipated that an attempted rob-

bery would meet with resistance, during which the victim might be shot either by himself or some one else in attempting to prevent the robbery, and those attempting to perpetrate the robbery would be guilty of murder."

Nevertheless, in the present case, even if the trial court erred by failing to intervene *ex mero motu*, any error was cured by the trial court's other instructions to the jury. The trial court correctly instructed the jury on felony murder before the jury originally began its deliberations. Specifically, the trial court instructed the jury that to convict Defendant of felony murder, the jury would have to find that "[D]efendant killed the victim with a deadly weapon[.]" The trial court then re-instructed the jury on felony murder on two other occasions in response to inquiries from the jury. Therefore, the jury had been correctly instructed on felony murder three times when the State made its improper statement. Moreover, after the State's improper statement, and before instructing the jury on acting in concert, the trial court instructed the jury as follows:

> Now, ladies and gentlemen, you've heard the additional arguments of counsel. I want to give you some further instructions on the law and before that, I want to remind you that you are to consider these instructions in context with and in light of all of the other instructions I have previously given you, both at the original time I charged you and the subsequent instructions that I have given you at your request. If all of you understand that you must do that and will agree to do that, please indicate by raising your hand.

> (All jurors indicate.)

> THE COURT: Let the record show that all jurors have so indicated.

For these reasons, we hold the trial court did not commit reversible error by failing to intervene *ex mero motu* following the State's improper argument.

## V.

[7] Defendant argues the trial court violated his constitutional rights to due process, a fair trial, and a trial by a fair and impartial judge, when the trial court expressed an opinion regarding Defendant's guilt. Specifically, Defendant argues the trial court impermissibly expressed an opinion as to Defendant's guilt by instructing the jury,

*ex mero motu*, on acting in concert after (1) a juror asked whether the juror could return a guilty verdict if Defendant was at the scene of the crime but did not pull the trigger, (2) the jury could not come to a unanimous decision, (3) the trial court inquired of the numerical breakdown, (4) the jury foreman said it was 11-1, and (5) the trial court did not give the jury an *Allen* charge. Defendant argues that "[b]y instructing for the first time on acting-in-concert, long after the jury had been deliberating, the trial judge's additional instructions clearly communicated to the jury that he was frustrated and they should convict . . . Defendant." Defendant also argues:

> By framing its instruction on acting-in-concert as a direct response to the jury's note that it was deadlocked so soon after the previous note from a juror stating they did not believe [Defendant] pulled the trigger, the trial court directly signaled the jury that it should convict [Defendant] of the charges against him. In the context in which it was given, the instruction was susceptible to no other interpretation than that [Defendant] was guilty no matter who fired the gun.

N.C. Gen. Stat. § 15A-1222 (2005) provides that a "judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1232 (2005) provides: "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." "A defendant's failure to object to alleged expressions of opinion by the trial court in violation of [N.C.G.S. § 15A-1222 and N.C.G.S. § 15A-1232] does not preclude his raising the issue on appeal." *State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). "Whether the accused was deprived of a fair trial by the challenged remarks must be determined by what was said and its probable effect upon the jury in light of all attendant circumstances, the burden of showing prejudice being upon the appellant." *State v. Faircloth*, 297 N.C. 388, 392, 255 S.E.2d 366, 369 (1979). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995).

In the present case, the trial court did not instruct the jury on acting in concert in response to a juror's question regarding whether the juror could find Defendant guilty if Defendant did not pull the trigger. Rather, in response to the juror's question, the trial court merely

instructed the jury to "decide the case based on the evidence that has been presented and on the law that I have given you." The trial court also re-instructed the jury on the presumption of innocence, reasonable doubt, and the State's burden to prove the identity of Defendant as the perpetrator of the crime.

The trial court did not instruct the jury on acting in concert until after the jury had deadlocked. Pursuant to N.C. Gen. Stat. § 15A-1234(a) (2005),

> After the jury retires for deliberation, the judge may give appropriate additional instructions to:
>
> (1) Respond to an inquiry of the jury made in open court; or
>
> (2) Correct or withdraw an erroneous instruction; or
>
> (3) Clarify an ambiguous instruction; or
>
> (4) Instruct the jury on a point of law which should have been covered in the original instructions.

"Whether or not to give additional instructions rests within the sound discretion of the trial court and will not be overturned absent abuse of that discretion." *State v. Bartlett*, 153 N.C. App. 680, 685, 571 S.E.2d 28, 31 (2002), *disc. review denied*, 356 N.C. 679, 577 S.E.2d 892 (2003).

In the present case, the trial court did not specify the specific subsection of N.C.G.S. § 15A-1234(a) under which it was giving the additional instruction. However, the trial court gave the additional instruction following a jury deadlock rather than in response to an inquiry of the jury. Therefore, the trial court was not proceeding under N.C.G.S. § 15A-1234(a)(1). There is also no indication that the trial court gave the additional instruction to correct or withdraw an erroneous instruction or to clarify an ambiguous instruction. Accordingly, the trial court did not proceed under N.C.G.S. § 15A-1234(a)(2) or (3). However, the State had offered evidence that Ms. Spivey and Defendant had a plan to rob the victim and that Ms. Spivey acted as a decoy to allow Defendant to enter the victim's house. Therefore, it was entirely appropriate for the trial court to instruct the jury on acting in concert. Because acting in concert should have been addressed in the trial court's original instructions, we hold that the trial court appropriately proceeded under N.C.G.S. § 15A-1234(a)(4).

Defendant argues that given the events preceding the additional instruction, the trial court expressed an opinion regarding Defendant's guilt by giving the additional instruction. However, this argument calls for excessive speculation. As we have already recognized, the trial court did not give the additional instruction in response to the question from the juror who was "not entirely convinced that . . . [D]efendant pulled the trigger[.]" Moreover, because the trial court could have and should have instructed the jury on acting in concert at the time of the original instructions, the trial court acted appropriately in giving the additional instruction. Under the totality of the circumstances, we cannot say that by giving the additional instruction the trial court expressed an opinion regarding Defendant's guilt. Accordingly, we overrule these assignments of error.

## VI.

[8] In a related argument, Defendant argues the trial court impermissibly coerced a jury verdict by instructing the jury, *ex mero motu*, on acting in concert after the jury had begun deliberating. "Article I, section 24 of the North Carolina Constitution prohibits a trial court from coercing a jury to return a verdict." *State v. Dexter*, 151 N.C. App. 430, 433, 566 S.E.2d 493, 496, *aff'd per curiam*, 356 N.C. 604, 572 S.E.2d 782 (2002).

> [A] defendant is entitled to a new trial if the circumstances surrounding jury deliberations "might reasonably be construed by [a] member of the jury unwilling to find the defendant guilty as charged as coercive, suggesting to him that he should surrender his well-founded convictions conscientiously held or his own free will and judgment in deference to the views of the majority and concur in what is really a majority verdict rather than a unanimous verdict."

*Id.* (quoting *State v. Roberts*, 270 N.C. 449, 451, 154 S.E.2d 536, 538 (1967)).

In the present case, Defendant relies upon the same sequence of events he relied upon in his previous argument to argue that the trial court impermissibly coerced a verdict. However, for the same reasons stated above, we hold that the trial court did not coerce the jury's verdict.

Defendant also relies upon *Brasfield v. United States*, 272 U.S. 448, 450, 71 L. Ed. 345, 346 (1926), where the United States Supreme Court held that it was reversible error for a trial court to inquire into

## IN RE T.H.T.

[185 N.C. App. 337 (2007)]

the numerical division of a jury deadlock. However, in *Lowenfield v. Phelps*, 484 U.S. 231, 240 n. 3, 98 L. Ed. 2d 568, 578 n. 3, *reh'g denied*, 485 U.S. 944, 99 L. Ed. 2d 286 (1988), the United States Supreme Court noted that its decision in *Brasfield* "makes no mention of the Due Process Clause or any other constitutional provision. The Federal Courts of Appeals have uniformly rejected the notion that *Brasfield's per se* reversal approach must be followed when reviewing state proceedings on habeas corpus." In *State v. Fowler*, 312 N.C. 304, 308, 322 S.E.2d 389, 392 (1984), our Supreme Court held:

> We do not consider questions concerning the division of the jury to be a *per se* violation of Art. I, § 24 when the trial court makes it clear that it does not desire to know whether the majority is for conviction or acquittal. Such inquiries are not inherently coercive, and without more do not violate the right to trial by jury guaranteed by the North Carolina Constitution.

In the present case, we hold the trial court's inquiry into the numerical division of the jury's deadlock did not coerce the jury's verdict. The trial court did not inquire whether the majority favored conviction. Moreover, the trial court had earlier given an appropriate response to the question from a juror who was "not entirely convinced that . . . [D]efendant pulled the trigger[.]" Furthermore, under the facts of the case, acting in concert was an appropriate instruction for the trial court to give to the jury. We overrule the assignments of error grouped under this argument.

No error.

Judges STEPHENS and SMITH concur.