IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA14-1119

 Filed: 2 June 2015

Johnston County, No. 10 CRS 54081

STATE OF NORTH CAROLINA

 v.

ADOLFO REYES MALDONADO

 Appeal by Defendant from judgment entered 19 December 2013 by Judge

Thomas H. Lock in Superior Court, Johnston County. Heard in the Court of Appeals

2 March 2015.

 Attorney General Roy Cooper, by Special Deputy Attorney General Sandra
 Wallace-Smith, for the State.

 Mark Montgomery for Defendant.

 McGEE, Chief Judge.

 Adolfo Reyes Maldonado (“Defendant”) appeals from his conviction of felony

murder, with the predicate felony being discharging a firearm into occupied property.

Defendant contends that the trial court erred (1) by not instructing the jury on

diminished capacity on the charge of discharging a firearm into occupied property,

(2) by instructing the jury that discharging a firearm into occupied property could

serve as the predicate felony to Defendant’s felony murder conviction, and (3) by not

submitting voluntary manslaughter to the jury as a lesser-included offense of first-
 STATE V. MALDONADO

 Opinion of the Court

degree murder by premeditation and deliberation. We find no error as to Defendant’s

first two challenges and no prejudicial error as to the third.

 I. Background

 Defendant and his estranged wife, Elizabeth Reyes (“Ms. Reyes”), had a

tumultuous relationship. The police regularly were called to intervene in their

personal disputes. Defendant sought medical treatment for serious knife wounds

inflicted by Ms. Reyes on multiple occasions. Defendant maintains that Ms. Reyes –

who was approximately six feet tall and almost three hundred pounds, who was

diagnosed with bipolar disorder, and who had a history of alcohol dependency, anger

issues, and paranoid ideation – was abusive throughout their relationship. Officer

Steve Little (“Officer Little”), who was “routinely involved in domestic calls” between

Ms. Reyes and Defendant, testified that he never saw Ms. Reyes with anything more

than superficial injuries and that she always appeared to be the aggressor in her

altercations with Defendant.

 However, the State also elicited testimony from Officer Little that, during a

previous interview, he stated that both Ms. Reyes and Defendant drank to excess and

Ms. Reyes “beat him as much as he beat her[.]” Additionally, Christy Metzger (“Ms.

Metzger”), an investigator for the Johnston County Department of Social Services,

testified about an interview she had with Ms. Reyes on 10 May 2010, during which

Ms. Reyes asserted that Defendant was controlling and would not let her have money,

friends, a phone, a car, or a job when they were together.

 -2-
 STATE V. MALDONADO

 Opinion of the Court

 The couple separated in May 2010, and Ms. Reyes moved in with her mother

and stepfather, Sandra and John Benjamin Croft (“Ms. Croft” and “Mr. Croft”), along

with the eleven-month-old son (“the Child”) of Ms. Reyes and Defendant. Thereafter,

according to Ms. Metzger, Defendant began calling Ms. Reyes upwards of ten times a

day while Ms. Reyes was at work, and sometimes at night. Ms. Reyes and Defendant

were engaged in an ongoing child support dispute.

 Defendant went to Mr. and Ms. Croft’s house (“the house”) on 1 July 2010. A

child support hearing was scheduled for the following day. Defendant argued with

Ms. Reyes and Mr. Croft in front of the house. Defendant then went to his truck,

loaded his shotgun, and returned to the house. Ms. Reyes had gone inside the house.

Mr. Croft testified he ran into the house, closed the front door, and said to Ms. Reyes,

who was in the kitchen with the Child: “Your old man’s trying to kill us. Run.”

 Defendant shot the front door and then entered the house. Mr. Croft ran into

the master bedroom and, as he was closing the bedroom door, was shot by Defendant.

Mr. Croft then jumped out a window and ran to a neighbor’s house for help. There

was a subsequent confrontation inside the house between Defendant and Ms. Reyes

that resulted in Ms. Reyes’ death and Defendant being non-critically shot in the face.

Ms. Reyes suffered gunshots to her upper left buttock, upper right chest, and the back

of her head. Defendant called 911 and was taken into custody when the police

arrived.

 -3-
 STATE V. MALDONADO

 Opinion of the Court

 At trial, Defendant presented a number of character witnesses who testified to

his peaceful nature. Defendant also presented the expert testimony of Dr. Ginger

Calloway (“Dr. Calloway”). Dr. Calloway testified that, on the night of Ms. Reyes’

death, Defendant was suffering from post-traumatic stress disorder (“PTSD”) as the

victim of ongoing abuse from Ms. Reyes.

 During the charge conference, Defendant requested diminished capacity

instructions on the charges of first-degree murder by premeditation and deliberation

of Ms. Reyes, assault with a deadly weapon with intent to kill inflicting serious injury

on Mr. Croft, attempted murder of Mr. Croft, felony breaking and entering, and

discharging a firearm into occupied property. The trial court ruled that it would

instruct on diminished capacity only on the charges of first-degree murder by

premeditation and deliberation of Ms. Reyes, attempted murder of Mr. Croft, and

felony breaking and entering. However, the trial court ruled that it would not give

diminished capacity instructions on discharging a firearm into occupied property or

assault with a deadly weapon inflicting serious injury on Mr. Croft. Defendant also

argued that discharging a firearm into occupied property could not serve as a

predicate felony to felony murder, on the grounds that there was an insufficient

relationship between Ms. Reyes’ death and Defendant’s shooting into the house. The

trial court disagreed.

 -4-
 STATE V. MALDONADO

 Opinion of the Court

 The jury found Defendant guilty of misdemeanor breaking and entering and

felony murder, with the predicate felony being discharging a firearm into occupied

property.1 Defendant appeals from his conviction for felony murder.

 II. Standard of Review

 This Court reviews challenges to the trial court's decisions regarding jury

instructions de novo. State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149

(2009).

 III. Diminished Capacity

 Defendant first challenges the trial court’s instructions on the charge of

“willfully” discharging a firearm into occupied property. Specifically, Defendant

argues that the “willful” element of this offense necessarily was subject to a

diminished capacity instruction at trial. See generally N.C. Gen. Stat. § 14-34.1

(2013). We disagree.

 “Diminished capacity is a means of negating . . . specific intent” by a defendant.

State v. Roache, 358 N.C. 243, 282, 595 S.E.2d 381, 407 (2004) (citation and internal

quotation marks omitted). It is not a defense to general intent crimes. State v.

Childers, 154 N.C. App. 375, 382, 572 S.E.2d 207, 212 (2002). “[S]pecific-intent

 1 The jury also found Defendant guilty of discharging a firearm into occupied property, but the
trial court arrested judgment on that conviction. See State v. Best, 196 N.C. App. 220, 229, 674 S.E.2d
467, 474 (2009) (“Under the Double Jeopardy Clause, a defendant may not be punished both for felony
murder and for the underlying, predicate felony, even in a single prosecution.” (citation and internal
quotation marks omitted)).

 -5-
 STATE V. MALDONADO

 Opinion of the Court

crimes are crimes which have as an essential element a specific intent that a result

be reached, while [g]eneral-intent crimes are crimes which only require the doing of

some act.” State v. Barnes, __ N.C. App. __, __,747 S.E.2d 912, 916 (2013), aff'd per

curiam, 367 N.C. 453, 756 S.E.2d 38 (2014) (emphasis added). The North Carolina

Supreme Court also has recognized the existence of “malice type” crimes, which are

“neither [ ] specific nor [ ] general intent offense[s] but require[ ] willful and malicious

conduct” by a defendant. State v. Jones, 353 N.C. 159, 167, 538 S.E.2d 917, 924 (2000)

(internal quotation marks omitted). Our caselaw has interpreted “willful” to mean

“the wrongful doing of an act without justification or excuse, or the commission of an

act purposely and deliberately in violation of law. [It] means something more than

an intention to commit the offense.” State v. Ramos, 363 N.C. 352, 355, 678 S.E.2d

224, 226 (2009) (citations and internal quotation marks omitted).

 N.C.G.S. § 14-34.1, which defines discharging a firearm into occupied property,

provides that

 [a]ny person who willfully or wantonly discharges or
 attempts to discharge any firearm or barreled weapon
 capable of discharging shot, bullets, pellets, or other
 missiles at a muzzle velocity of at least 600 feet per second
 into any building, structure, vehicle, aircraft, watercraft,
 or other conveyance, device, equipment, erection, or
 enclosure while it is occupied is guilty of a Class E felony.

Because general intent crimes “only require the doing of some act” proscribed by law,

Barnes, __ N.C. App. at __, 747 S.E.2d at 916, whereas the willful conduct in N.C.G.S.

§ 14-34.1 requires “something more than an intention to commit” such an act, see

 -6-
 STATE V. MALDONADO

 Opinion of the Court

Ramos, 363 N.C. at 355, 678 S.E.2d at 226, Defendant urges this Court to view

discharging a firearm into occupied property as neither a specific nor general intent

crime, but rather as a “malice type” crime. Defendant further urges this Court to

require diminished capacity instructions on “malice type” crimes when evidence of

diminished capacity has been presented at trial.

 Defendant’s argument fails on both fronts. His brief correctly notes that our

North Carolina Supreme Court recognized the existence of “malice type” crimes in

Jones, 353 N.C. at 167, 538 S.E.2d at 924. However, we are also bound by State v.

Byrd, 132 N.C. App. 220, 222, 510 S.E.2d 410, 412 (1999), which held that

“discharging a firearm into occupied property is a general intent crime[.]” See In re

Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (“Where a panel of the

Court of Appeals has decided the same issue, albeit in a different case, a subsequent

panel of the same court is bound by that precedent, unless it has been overturned by

a higher court.”).

 Even if we were to entertain the contention, arguendo, that our Supreme

Court’s post-Byrd recognition of “malice type” crimes in Jones might prompt this

Court to view discharging a firearm into occupied property as a “malice type” crime,

the end result for Defendant would be no different. Defendant has provided no

authority holding that “malice type” crimes are subject to diminished capacity

 -7-
 STATE V. MALDONADO

 Opinion of the Court

instructions.2 Moreover, in other crimes requiring malicious conduct, such as second-

degree murder, see N.C. Gen. Stat. § 14-17(b)(1) (2013), it is well-established that

“[d]iminished capacity that does not amount to legal insanity is not . . . a defense to

the element of malice.” See State v. West, 180 N.C. App. 664, 668, 638 S.E.2d 508,

511 (2006) (citing State v. Page, 346 N.C. 689, 698, 488 S.E.2d 225, 231 (1997)). As

such, to the extent that there may be a meaningful distinction between general intent

and “malice type” crimes, this distinction does not seem to come into play in the realm

of diminished capacity instructions. “Diminished capacity is a means of negating . . .

specific intent” only. See Roache, 358 N.C. at 282, 595 S.E.2d at 407. Therefore, the

trial court did not err by declining to give a diminished capacity instruction on the

charge of discharging a firearm into occupied property.3

 2 Defendant does cite State v. Gunn, 24 N.C. App. 561, 211 S.E.2d 508 (1975), for the contention
that diminished capacity can negate the willfulness requirement of N.C.G.S. § 14-34.1. In Gunn, the
trial court instructed the jury that discharging a firearm into occupied property was a specific intent
crime. Id. at 563, 211 S.E.2d at 510. The jury still found the Gunn defendant guilty of this offense.
Id. On appeal, this Court did not endorse the trial court’s classification of discharging a firearm into
occupied property as a specific intent crime, but rather it found that there was no prejudicial error
because the specific intent instruction only made the State overcome an even higher burden at trial.
Id.
 3 Also, contrary to Defendant’s position, it is not the case that “eliminat[ing] diminished

capacity as a defense” here transformed discharging a firearm into occupied property into a strict
liability offense by “effectively negat[ing] the statutory requirement that the discharge be willful [or]
wanton.” The act that is proscribed by N.C.G.S. § 14-34.1 is not simply discharging a firearm into
occupied property. It is “willfully or wantonly” discharging a firearm into occupied property, N.C.G.S.
§ 14-34.1 (emphasis added), and the State had the burden of proving this at trial.

 -8-
 STATE V. MALDONADO

 Opinion of the Court

 IV. “Interrelationship” Between the Predicate Felony and Homicide

 Defendant challenges the use of discharging a firearm into occupied property

as the predicate felony to his felony murder conviction. Specifically, Defendant

argues that there was an insufficient “interrelationship” between the death of Ms.

Reyes and Defendant’s shooting into the house to support his felony murder

conviction in the present case. We disagree.

 The elements of felony murder are (1) that a defendant, or someone with whom

the defendant was acting in concert, committed or attempted to commit a predicate

felony under N.C. Gen. Stat. § 14-17(a) (2013);4 (2) that a killing occurred “in the

perpetration or attempted perpetration” of that felony; and (3) that the killing was

caused by the defendant or a co-felon. See State v. Williams, 185 N.C. App. 318, 329,

332, 648 S.E.2d 896, 904, 906 (2007). Regarding the second element, that the killing

must occur “in the perpetration or attempted perpetration” of a predicate felony, id.,

“[t]he law does not require that the homicide be committed to escape or to complete

the underlying felony.” State v. Terry, 337 N.C. 615, 622, 447 S.E.2d 720, 723 (1994).

Indeed, “there need not be a ‘causal relationship’ between the underlying felony and

 4 The predicate felonies under this section are “any arson, rape or a sex offense, robbery,
kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon[.]” Id.
(emphasis added). In order to support a felony murder conviction, these predicate felonies also must
be committed with “a level of intent greater than culpable negligence,” regardless of “[w]hether [they
are] ‘general intent,’ ‘specific intent,’ or ‘malice [type]’ crimes[.]” Jones, 353 N.C. at 167, 538 S.E.2d at
924. In the present case, the jury found that Defendant acted willfully, which “means [he acted with]
something more than an intention to commit the offense.” See Ramos, 363 N.C. at 355, 678 S.E.2d at
226.

 -9-
 STATE V. MALDONADO

 Opinion of the Court

the homicide, only an ‘interrelationship.’ ” Id. at 622, 447 S.E.2d at 724. “[A]ll that

is required is that the elements of the underlying offense and the murder occur in a

time frame that can be perceived as a single transaction.” State v. Moore, 339 N.C.

456, 462, 451 S.E.2d 232, 234 (1994) (citation and internal quotation marks omitted).

Otherwise, there must be a “break in the chain of events leading from the initial

felony to the act causing death” in order to render the felony murder rule inapplicable

in a particular case. Cf. id. at 461, 451 S.E.2d at 234.

 In Moore, the defendant assaulted his girlfriend at the home of her sister and

her sister’s boyfriend. Id. at 460, 451 S.E.2d at 233. The defendant left the sister’s

house but returned later in the day. Id. After the defendant’s girlfriend repeatedly

refused to speak to him, the defendant began shooting into the sister’s house. Id.

This prompted the sister’s boyfriend to go outside, confront the defendant, and

exchange gunfire. Id. The sister’s boyfriend returned to the house – with serious

gunshot wounds – and reloaded his gun, but he was unable to go back outside because

the defendant continued to shoot into the house until police arrived. Id. at 460, 451

S.E.2d at 234. The sister’s boyfriend later died from his injuries, and the defendant

was found guilty of felony murder at trial; the predicate felony was discharging a

firearm into occupied property. Id. at 459, 451 S.E.2d at 233.

 On appeal, the Moore defendant argued that the sister’s boyfriend’s going

outside to confront him constituted a break in the chain of events between the

 - 10 -
 STATE V. MALDONADO

 Opinion of the Court

defendant’s firing into the house and the death of the sister’s boyfriend. Id. at 461,

451 S.E.2d at 234. However, our Supreme Court held that the requirement under

N.C.G.S. § 14-17(a), that the killing be committed in the perpetration of a predicate

felony was “sufficiently broad to include the entire series of relevant events beginning

with the original shooting into the house and continuing until the sirens were heard

and the shooting ceased.” Id. at 462, 451 S.E.2d at 235.

 The present case is distinguishable from Moore to an extent, in that the Moore

defendant shot into the house before and after his direct confrontation with the

sister’s boyfriend. See id at 460, 451 S.E.2d at 233–34. In the present case, Defendant

stopped shooting into the house once he forced his way through the front door and

continued shooting inside the house. Defendant also argues that, once he was inside

the house, Ms. Reyes attempted to take the gun from him and that this confrontation

by Ms. Reyes constituted a break in the chain of events that led to her death. Even

taking Defendant’s account of the events as true, just as the Moore Court held that

the sister’s boyfriend “did not break the chain of events by going outside to defend his

home,” id. at 462, 451 S.E.2d at 235, Ms. Reyes did not break the chain of events by

defending herself inside her home after Defendant continued his assault indoors.

Therefore, Defendant’s shooting into the house and Ms. Reyes’ subsequent death

inside the house “occur[red] in a time frame that can be perceived as a single

transaction.” See id. at 462, 451 S.E.2d at 234. The trial court did not err by allowing

 - 11 -
 STATE V. MALDONADO

 Opinion of the Court

the discharging of a firearm into occupied property to serve as the predicate felony to

Defendant’s felony murder conviction.

 V. The Trial Court Not Instructing the Jury On Voluntary Manslaughter

 Defendant contends the trial court erred by not providing the jury with an

instruction on voluntary manslaughter as a lesser-included offense of first-degree

murder by premeditation and deliberation. Specifically, Defendant argues that the

jury should have received an instruction on voluntary manslaughter based on the

theory of imperfect self-defense. We find no prejudicial error by the trial court.

 A defendant is entitled to a charge on a lesser-included
 offense when there is some evidence in the record
 supporting the lesser offense. Conversely, [w]here the
 State's evidence is positive as to each element of the offense
 charged and there is no contradictory evidence relating to
 any element, no instruction on a lesser[-]included offense
 is required.

State v. James, 342 N.C. 589, 594, 466 S.E.2d 710, 713-14 (1996) (citations and

internal quotation marks omitted). An instruction of voluntary manslaughter, based

on the theory of imperfect self-defense, is appropriate where there is evidence that a

defendant (1) believed it was necessary to kill the deceased in order to save himself

from death or great bodily harm; (2) the belief was reasonable; and (3) although

initially acting without murderous intent, the defendant was the original aggressor

in the circumstance. State v. Norris, 303 N.C. 526, 530, 279 S.E.2d 570, 573 (1981).

 In the present case, Defendant points out that the jury acquitted him of all

charges requiring specific intent. This included convicting Defendant of

 - 12 -
 STATE V. MALDONADO

 Opinion of the Court

misdemeanor breaking and entering, but acquitting Defendant of felony breaking and

entering, which had the added element of entering the house with felonious intent.

See generally N.C. Gen. Stat. § 14-54 (2013). Thus, Defendant maintains that the

jury could reasonably have concluded that, although he was the original aggressor,

Defendant entered the house without the felonious intent to seriously injure anyone

inside,5 and that it became reasonably necessary for him to defend himself – lethally

– during the subsequent confrontation with Ms. Reyes inside the house. Assuming

arguendo that this would support an instruction on voluntary manslaughter, the trial

court’s failure to give such an instruction did not amount to prejudicial error.

 In State v. Swift, 290 N.C. 383, 407, 226 S.E.2d 652, 669 (1976), the North

Carolina Supreme Court held

 [i]t is a well[-]established rule that when the law and
 evidence justify the use of the felony[ ]murder rule, then
 the State is not required to prove premeditation and
 deliberation, and neither is the court required to submit to
 the jury second-degree murder or manslaughter unless
 there is evidence to support it.

Following Swift, “[t]he application of this standard . . . resulted in divergent lines of

cases in the context of felony murder.” State v. Millsaps, 356 N.C. 556, 561, 572

S.E.2d 767, 771 (2002) (citations omitted). For example,

 [i]n one group of cases, the Court has simply found that,
 applying the applicable evidentiary standard, the evidence

 5 When the jury was instructed on felony breaking and entering, the only felonious intent the
jury was instructed to consider was whether Defendant intended to commit an assault with a deadly
weapon inflicting serious injury when he entered the house.

 - 13 -
 STATE V. MALDONADO

 Opinion of the Court

 did not support submission of a lesser-included offense.
 Another group of cases suggests that if any evidence is
 presented to negate first-degree murder, then the jury
 must be instructed on the lesser-included offenses
 supported by the evidence. Yet another group of cases
 holds or suggests in dicta that if the evidence supports a
 conviction based on felony murder, the failure to instruct
 on [lesser-included offenses] is not error or not prejudicial
 error.

Id. After examining each of these lines of cases, our Supreme Court in Millsaps

articulated the following principles regarding felony murder.

 (i) If the evidence of the underlying felony supporting
 felony murder is in conflict and the evidence would support
 a lesser-included offense of first-degree murder, the trial
 court must instruct on all lesser-included offenses
 supported by the evidence whether the State tries the case
 on both premeditation and deliberation and felony murder
 or only on felony murder. State v. Thomas, 325 N.C. 583,
 386 S.E.2d 555. (ii) If the State tries the case on both
 premeditation and deliberation and felony murder and the
 evidence supports not only first-degree premeditated and
 deliberate murder but also second-degree murder, or
 another lesser offense included within premeditated and
 deliberate murder, the trial court must submit the lesser-
 included offenses within premeditated and deliberate
 murder irrespective of whether all the evidence would
 support felony murder. State v. Phipps, 331 N.C. 427, 418
 S.E.2d 178; State v. Wall, 304 N.C. 609, 286 S.E.2d 68; see
 also State v. Vines, 317 N.C. 242, 345 S.E.2d 169 (holding
 that the failure to submit second-degree murder and
 involuntary manslaughter was not prejudicial error where
 the trial court submitted premeditation and deliberation,
 voluntary manslaughter, and felony murder; and the jury
 did not find premeditation and deliberation). (iii) If the
 evidence as to the underlying felony supporting felony
 murder is not in conflict and all the evidence supports
 felony murder, the trial court is not required to instruct on
 the lesser offenses included within premeditated and

 - 14 -
 STATE V. MALDONADO

 Opinion of the Court

 deliberate murder if the case is submitted on felony murder
 only. See State v. Covington, 290 N.C. 313, 226 S.E.2d 629.

Id. at 565, 572 S.E.2d at 773-74. Pursuant to the second principle in Millsaps, the

trial court erred if it submitted both felony murder and murder by premedication and

deliberation to the jury but did not instruct on voluntary manslaughter, assuming

arguendo it was supported by the evidence. See id. However, because “[D]efendant

was found guilty of murder in the first degree on the theory of felony murder and was

found not guilty on the charge of first-degree murder [by] premeditation and

deliberation, no prejudice resulted from the court's failure to charge on voluntary

manslaughter.” See Wall, 304 N.C. at 621, 286 S.E.2d at 75.6

 NO ERROR IN PART; NO PREJUDICIAL ERROR IN PART.

 Judges BRYANT and STEELMAN concur.

 6 Defendant also contends that he was entitled to an instruction on voluntary manslaughter
under a “heat of passion” theory. For similar reasons, we find no prejudicial error by the trial court.

 - 15 -